

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-11-1997

# Bray v. Marriot Hotels

Precedential or Non-Precedential:

Docket 95-5662

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation
"Bray v. Marriot Hotels" (1997). *1997 Decisions.* Paper 83.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/83

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 95-5662

_____

BERYL BRAY,

Appellant

v.

MARRIOTT HOTELS a/k/a MARRIOTT
CORP. a/k/a/ MARRIOTT HOTEL CORP.,
MARRIOTT HOTELS and RESORTS, INC., JOHN DOE # 1-5 and
XYZ CORP. # 1-5

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
Civil Action No. 94-979

_____

Argued:  October 1, 1996

Before:  ALITO, MCKEE, Circuit Judges,
and GREEN, District Judge.[*]

(Filed April 11, 1997)

Joseph H. Neiman, Esq. (Argued)
25 E. Salem Street
Hackensack, NJ 07601

Attorney for Appellant

Francis X. Crahay, Esq. (Argued)
Whitney W. Bremer, Esq.
Gina G. Milestone, Esq.
William J. Prout, Jr., Esq.
Tompkins, McGuire & Wachenfeld
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102-4070

_____

     [*]  The Honorable Clifford Scott Green, Senior Judge, United
States District Court for the Eastern District of Pennsylvania,
sitting by designation.

---

OPINION OF THE COURT

---

MCKEE, <u>Circuit Judge</u>.

Beryl Bray appeals from the district court's grant of summary judgment in favor of the Marriott Hotel Corporation. Bray filed suit in the district court for the District of New Jersey alleging race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C.A. §§ 2000e to 2000e-17 (1981 & Supp. 1994) and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-12(d).  For the reasons that follow, we will reverse and remand for further proceedings consistent with this opinion.

I.

Bray, an African-American female, was hired as a room attendant at the New York Marquis Marriott in 1985.  App. at 99a. Within eight months, she was promoted to Assistant Housekeeping Manager, and, two years later, she was promoted to Housekeeping Manager at the Park Ridge Marriott in New Jersey.  App. at 100a-02a.  In early 1993, Park Ridge initiated a "posting" for the position of Director of Services.  "Posting" is the process by which employees within Marriott who are qualified for an available position within the company make known their desire to be considered for that position.  Any associate who satisfies the minimum requirements for the job has the opportunity to have his

or her name submitted or "posted" for the available position. An associate cannot post for a job if he or she is not qualified for that position.

Bray posted for the position of Director of Services which had been vacated by her former supervisor, Richard Lesser. App. at 109a-10a. Between seven and nine other candidates also posted for that position. App. at 225a. In his deposition, Leo Nemetz, the General Manager at the Park Ridge Marriott Hotel, explained that he conferred with George Joosten, the Director of Operations, and Robert Steussy, the Director of Human Resources, as to the qualifications of the various candidates.[1] App. at 227a-28a.

Nemetz testified that he initially ranked the candidates by their PAF scores,[2] but all of the criteria set forth in Marriott's Center Management System Career Planning Guidelines Policy for the Career Planning Process ("MCMS") were considered in deciding which one candidate would be interviewed. The MCMS sets forth the following considerations to be employed in ranking candidates for a position:

**EXPERIENCE**
*Compare each candidates relevant work experience both pre-

---

[1] Although several different spellings of "Joosten" and "Steussy" appear throughout the record, we rely on those used in the district court's opinion except when quoting text where a different spelling is used.

[2] Marriott formally evaluates its employees and assigns them a "PAF" score on a sliding scale of "1" to "4" with "1" being the highest. See app. at 137a, 224a.

3

and post–Marriott.
*What experience level does the position require?

**PAF RATING**
*Does one candidate have a higher PAF rating than another?
*Evaluate the candidate's MDA [Management Development Assessment] or SDA [Supervisor Development Assessment] (if available) along with the skill requirements of the position.

**TRAINING AND EDUCATION**
*Does the position require extensive or specialized training (e.g., culinary, revenue management, information systems)?
*Does the candidate have the necessary training and education?

**RELOCATION**
*Cost of Relocation for each candidate in relation to budget
*Input of Regional Team or senior management, i.e., Regional or Senior Vice President if house move is involved.

**SALARY**
*Comparison of candidate's salary in relation to the hotel's, staff department or support operation's budget.
*Importance of position salary budget vs. candidate's salary.

App. at 43a. Nemetz further stated in his deposition that all three individuals who participated in the meeting unanimously agreed that Therese Riehle, who is White and had been working at a different Marriott hotel, would be interviewed as the top candidate. App. at 231a–32a. Riehle was hired effective April 10, 1993. App. at 50a. According to Nemetz, the principal reason for promoting Riehle was that she had the highest PAF rating, app. at 230a, 235a, but he insisted that all of the factors in the MCMS were considered.

Riehle had begun working for Marriott in May 1988 as a co-op

4

student.  App. at 69a.  In 1989, she accepted a position as an Assistant Housekeeping Manager at the New York Marquis Marriott and, in 1991, she became the Assistant Director of Services there.  App. at 74a.  Riehle's Associate Profile[3] reflects that she possessed an occupational grade level of 45 (indicating she supervised managers), had a degree in Restaurant and Hotel Management, app. at 68a, and had received two "Manager of the Month" awards while at the Marquis, app. at 76a–77a.  Riehle was interviewed for the promotion, and, during that interview, Nemetz learned that she had experience overseeing renovations (called "re-dos") which the Park Ridge was soon scheduled to undergo.  App. at 236a.  Riehle had also attended over forty training sessions.[4]  App. at 52a–53a.

Bray had PAF ratings of "2" in each of the three years reported in her Associate Profile (1990, 1991, and 1992).  App. at 54a.  Since Bray was at a smaller hotel than Riehle, Bray only supervised associates and accordingly she was assigned a lower occupational grade level than Riehle, "43."  App. at 55a.  Bray had attended thirteen training sessions over her eight-year period with Marriott, and her college degree was in English and

---

[3]  Personnel evaluations and other information relating to an employee's job performance and background are maintained in the employee's Associate Profile.

[4]  The seminars included the following subjects: stress management skills, drugs in the workplace, responding to emergencies, counseling skills, career planning, leadership skills, and discipline skills.

History.  App. at 54a, 56a.

Bray did not receive the promotion.  Instead, Riehle was offered the position.  Bray claimed that she had been denied the promotion to Director of Services because she was Black and then filed this suit against Marriott under Title VII.  Following discovery, the district court granted summary judgment against Bray and in favor of Marriott, and this appeal followed.

Discussion

II.

We have jurisdiction pursuant to 28 U.S.C. § 1291 to review the final order of the district court, which exercised jurisdiction under 42 U.S.C. § 2000e et seq. and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

On review of a district court's grant of summary judgment, we apply the same test the district court should have applied initially.  Sempier v. Johnson & Higgins, 45 F.3d 724, 727 (3d Cir.), cert. denied, 115 S. Ct. 2611 (1995).  Summary judgment is appropriate only when the admissible evidence fails to demonstrate a genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  When the nonmoving party bears the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The nonmoving party creates a genuine

6

issue of material fact if he or she provides sufficient evidence to allow a reasonable jury to find for him or her at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In reviewing the record, the court must give the nonmoving party the benefit of all reasonable inferences. Sempier, 45 F.3d at 727; Colgan v. Fisher Scientific Co., 935 F.2d 1407, 1413 (3d Cir. 1991).

III.

In a case of failure to promote under Title VII, the plaintiff must carry the initial burden of establishing a prima facie case of unlawful discrimination. Thus, the plaintiff must establish that he or she
(1) belongs to a protected category;
(2) applied for and was qualified for a job in an available position;
(3) was rejected;
(4) and, after the rejection, the position remained open and the employer continued to seek applications from persons of plaintiff's qualifications for the position.

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).[5]

If the plaintiff fulfills these elements, the burden of production then shifts to the defendant to "'articulate some legitimate, nondiscriminatory reason for the employee's

---

[5] Here, the position did not remain open after Bray was rejected. Rather, the position was filled when Riehle was chosen over Bray. However, this variance from the letter of the McDonnell Douglas Corp. formula is not relevant to our analysis. "The facts necessarily will vary in Title VII cases, and the specification . . . of the prima facie proof required . . . is not necessarily applicable in every respect to different factual situations." McDonnell Douglas Corp., 411 U.S. at 802 n.13.

7

rejection.'" Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) (quoting McDonnell Douglas Corp., 411 U.S. at 802); see also Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061 (3d Cir. 1996)(en banc).

The employer must then come forth with evidence, which, if taken as true, demonstrates that there was a nondiscriminatory reason for the decision not to promote the plaintiff. See id. at 1066. This reason need not be proven to be the reason the plaintiff failed to receive the promotion because the burden of proving the actual discrimination lies at all times with the plaintiff. If the employer satisfies its burden of production, then the plaintiff must produce evidence from which a reasonable factfinder could conclude either that the defendant's proffered justifications are not worthy of credence or that the true reason for the employer's act was discrimination. The plaintiff must:

> demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence" and hence infer "that the employer did not act for [the asserted] non-discriminatory reasons."

Fuentes, 32 F.3d at 765 (citation omitted). Otherwise, the employer is entitled to judgment as a matter of law.

An inference of pretext may arise if the plaintiff can raise suspicions with respect to the defendant's credibility or the employer's treatment of the employee. Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 638-39 (3d Cir. 1993). The

8

inference, along with the components of the plaintiff's prima facie case, allow a jury to conclude that the employer was actually motivated by illegal bias, but it does not compel that result. See Sheridan, 100 F.3d at 1066-67.  Moreover, the plaintiff cannot prevail under Title VII merely by establishing that the employer made a decision that was wrong or mistaken. Fuentes, 32 F.3d at 765.

"Summary judgment is precluded if a disputed fact exists which might affect the outcome of the suit under the controlling substantive law.  A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Josey, 996 F.2d at 637 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986))(emphasis added).

### A.

The district court ruled that Bray had established a prima facie case of discrimination, and Marriott does not appeal that ruling.  Marriott offered evidence of a nondiscriminatory reason for its selection of Riehle to rebut the presumption of discrimination created by Bray's prima facie case.  Marriott asserted that Riehle was the best applicant for the position and pointed to a host of factors to support its contention.  Riehle had a higher PAF score, and, although Bray had been at Marriott longer, it contended that Riehle's experience was superior as reflected by her higher occupational grade level (45 as compared

9

to Bray's 43) and her supervision of five managers. Marriott also noted that Riehle's prior experience with renovations was an added reason for preferring her to Bray because renovations were due to begin at the Park Ridge. That experience, however, is of limited assistance to our analysis because Nemetz testified that Riehle's experience with re-dos did not factor into the rankings. Dist. Ct. Op. at 19. Moreover, there is evidence that suggests that Marriott did not learn of this experience until Riehle's interview, and Bray contends that the discrimination occurred when Marriott decided to deny her the promotion and interview Riehle. See Appellant Br. at 19-20. Marriott also pointed to the fact that Riehle had attended far more seminars and training sessions than Bray to support its contention that Riehle was the better candidate.

B.

We begin by focusing on the dispute over whether Bray was ever interviewed for the promotion and Nemetz's testimony regarding her qualifications for that promotion. In doing so, however, we stress that it is the totality of the evidence that must guide our analysis rather than the strength of each individual argument. The dissent carefully explains each of the discrepancies in this record in isolation and concludes that none of them creates a material issue of fact. See Dissenting Op. at 8-11. We have previously noted that such an analysis is improper in a discrimination case:

> A play cannot be understood on the basis of

some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario.

Andrews v. City of Philadelphia, 895 F.2d 1469, 1484 (3d Cir. 1990). Thus, we must determine whether the totality of the evidence would allow a reasonable factfinder to conclude that Bray has established the alleged bias.

The issue of Bray's interview was hotly contested before the district court, but Marriott conceded this issue for purposes of its legal argument on summary judgment. Given that concession, the district court assumed that George Joosten, the Director of Operations, did afford Bray a luncheon interview for the promotion. The dispute over that interview is, however, significant to our analysis and worthy of discussion.

Marriott's MCMS sets forth the procedure and criteria for promotions within Marriott. In addition to outlining the criteria by which applicants for promotions are screened, it states that initially only one candidate should be interviewed.

> Upon conclusion of screening the candidates, only one may be chosen to interview in person with the hiring manager. This is determined by using all available information as augmented by the screening process to re-rank the candidates. After the in-person interview, the hiring manager must decide whether to hire that candidate before conducting subsequent interviews.

App. at 44a.

Bray insists that, during her interview, Joosten told her she was the leading candidate and that her first decision after

11

she was officially promoted would be hiring a new housekeeping manager to fill the vacancy that her promotion would create.  See app. at 328a.  Leo Nemetz, the General Manager of the Park Ridge Hotel, testified in his deposition that Joosten told him there had been no interview and that Bray's lunch with Joosten was nothing more than an opportunity for Joosten to become acquainted with Bray.  App. at 233a-34a.  Richard Lesser, Bray's supervisor, stated in his affidavit: "I have been advised that there is a question as to whether or not George Jooston set up an interview with Beryl Bray for the position of director of services.  This interview was set up in my presence."  App. at 325a.  We must take as fact that Bray was interviewed for the promotion.  Under Marriott's policy, this would mean that she was then considered the number one candidate for the position.  Therefore, before Marriott could conduct subsequent interviews of other candidates, it had to decide whether to promote Bray.  But Bray did not learn that she had been denied the position until after Joosten told her that Therese Riehle had been interviewed and offered the position of Director of Services.  App. at 131a.  Yet, Nemetz testified that no candidates were interviewed until after they had been ranked, that they were ranked first by their PAF scores, and that only Riehle was interviewed because she was the top candidate for the position under that ranking.  App. at 228a-31a.

It is possible that Joosten interviewed Bray outside the formal decision-making process and that the result of that

12

interview (or even the fact of it) was never shared with Nemetz or others responsible for selecting Lesser's successor. It is also possible that Bray's interview was not favorable and that Riehle was then interviewed based upon her PAF scores and experience. However, there is no testimony to support either conjecture, and, even if there were, it would be up to a jury to reconcile the conflicting testimony surrounding Bray's interview and the ranking of candidates.

The dispute over Bray's ranking is particularly relevant to our Title VII analysis because of Nemetz's discredited belief that Bray was not even qualified for the promotion. The following exchange occurred during Nemetz's deposition:

Q: Did you think that Beryl Bray was qualified to be the director of services at the Park Ridge Marriott?

A: I can't answer that question because I just didn't go into anything other than use the – – – the ranking.

Q: I'm not asking if you thought ––– Therese Riehle was the best. . . . I'm asking you if you thought Beryl Bray was qualified to be the director of services . . . .

A: No, I didn't.

Q: Can you tell me why not?

A: I thought she was an excellent employee who was a maintainer. <u>If I thought she was capable of doing the job, I may have given it to her.</u> But I was looking for the best qualified candidate.

App. at 262a–63a (emphasis added). A factfinder should determine why Nemetz felt that Bray was not qualified or "capable of doing

13

the job." Since she established a prima facie case under Title VII, the factfinder could conclude that Nemetz's erroneous view of her ability was the result of illegal bias. See Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1067-68 (3d Cir. 1996)(en banc)(the factfinder can conclude from a rejection of an employer's proffered explanation and a plaintiff's prima facie case that bias was the actual reason a Title VII plaintiff was not promoted).

Nemetz then retreated from his position that Bray was not "capable of doing the job," and his attorney reminded him that Bray could not have posted for the position had she not been qualified.

> Q: So it was your opinion that Beryl Bray was not qualified to be director of services . . . ?
>
> A: No, it was not my ---
>
> . . . .
>
> A: I should --- she was not --- let me think. I used the ranking. I used the ranking of ----
>
> [Interruption by Counsel for Marriott]: I'll just object to the question because of Marriott's policy that you can't even post unless you're qualified for the position.

App. at 263a. The dissent chooses to interpret this as merely Nemetz's inarticulate statement that he was seeking the "best" candidate, and that Bray, though qualified, was not the "best qualified" candidate. See Dissenting Op. at 10. A factfinder may well agree with that interpretation, but that is not for us

14

to decide.

Further doubt is cast upon the selection process by Nemetz's testimony that Riehle was unanimously selected the number one candidate. App. at 232a. He later explained that Joosten had not given any input.

> [Joosten] sat in the room with us. When we said --- I did ask. No one said anything. No one had any disapprovals so I said to Bob Stucey, let's go ahead and set her up and George said I prefer staying out of this.

App. at 259a (emphasis added). After Riehle was hired, Joosten told Bray:

> You are both equally qualified. You had the experience. She had the rating of a one. And since you were -- since you had been there for a while we thought it wouldn't be an incentive for you.

App. at 130a-31a.

"An employer can act only through individual supervisors and employees; discrimination is rarely carried out pursuant to a formal vote of a corporation's board of directors." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 75 (1986).

> The distinct method of proof in employment discrimination cases, relying on presumptions and shifting burdens of articulation and production, arose out of the Supreme Court's recognition that direct evidence of an employer's motivation will often be unavailable or difficult to acquire.

Sheridan, 100 F.3d at 1071. Therefore, "[a] plaintiff is not required to produce evidence which necessarily leads to the conclusion 'that the employer did not act for nondiscriminatory

15

reasons.'"  Sempier v. Johnson & Higgins, 45 F.3d 724, 728 (3d Cir.), cert. denied, 115 S. Ct. 2611 (1995).

A reasonable jury could conclude from Nemetz's concededly inaccurate assessment of Bray that the decision to reject her and interview Riehle was driven by racial bias and not by the explanations offered by Marriott.  See Sheridan, 100 F.3d at 1067-68 ("[T]he elements of the prima facie case and disbelief of the defendant's proffered reasons are the threshold findings, beyond which the jury is permitted, but not required, to draw an inference leading it to conclude that there was intentional discrimination.").  A reasonable jury could also conclude that Nemetz's apparent belief that Bray was "more of a maintainer" was based upon racial bias.  See id.

If Nemetz's assessment of Bray was racially biased, his interpretation of the purportedly objective criteria he relied upon to hire Riehle would not insulate Marriott's employment decision from that taint.  See, e.g., Hampton v. Borough of Tinton Falls Police Dep't, 98 F.3d 107, 113 (3d Cir. 1996)(reversing summary judgment in favor of employer where "district court either ignored several discrepancies in the evaluation process, or failed to give all reasonable inferences arising therefrom [to the plaintiff]").  Although Steussy and Joosten were also involved in the hiring process, it is apparent on this record that Nemetz was the key decisionmaker.  He was in charge of the Park Ridge Marriott, and both Joosten and Steussy

16

reported to him.  See app. at 200a, 258a.  Furthermore, although there is conflicting testimony as to the role Joosten played, it appears that he refrained from direct participation in the decision to promote Riehle because he had a prior connection to the hotel where she previously worked.  Appellee Br. at 24; app. at 258a-59a.  Therefore, it is particularly relevant to our decision whether there are discrepancies in how Nemetz evaluated the criteria he purportedly relied upon to rank the applicants and select Riehle.  And we conclude that there were.

The dissent argues, however, that none of the evidentiary discrepancies would allow a reasonable jury to doubt Marriott's proffered explanation that it was looking for "the best" candidate and that, therefore, Bray cannot prevail under Fuentes or Sheridan.  Dissenting Op. at 10.  We do not believe that Title VII analysis is so tightly constricted.  This statute must not be applied in a manner that ignores the sad reality that racial animus can all too easily warp an individual's perspective to the point that he or she never considers the member of a protected class the "best" candidate regardless of that person's credentials.  The dissent's position would immunize an employer from the reach of Title VII if the employer's belief that it had selected the "best" candidate, was the result of conscious racial bias.  Thus, the issue here, is not merely whether Marriott was seeking the "best" candidate but whether a reasonable factfinder could conclude that Bray was not deemed the best because she is

17

Black.  Indeed, Title VII would be eviscerated if our analysis were to halt where the dissent suggests.

With this as our starting point, we examine the reasons that Marriott proffered to justify its promotion of Riehle over Bray.

1.  PAF ratings

Nemetz testified that each applicant's PAF scores played a major role in determining who was the top candidate.  Similarly, the district court concluded that the decision to promote Riehle was based in large part upon the PAF scores in each applicant's job profile and that these objective scores were a nondiscriminatory explanation for why Riehle was picked over Bray.  Riehle had PAF scores of "1", "1", and "2" for each of her prior evaluations.  All three of Bray's most recent scores, on the other hand, were "2s."  Nemetz was aware that Riehle's most recent PAF was "1", but he was unable to recall at deposition the two earlier evaluations.  App. at 231a.  However, the record raises an issue of fact as to the timing of Riehle's most recent rating.

Although Riehle's first two evaluations were a year apart (11/16/91 and 11/14/92), her most recent evaluation -- the one that Nemetz recalled -- was only six months after the previous evaluation.[6]  On the other hand, all of Bray's evaluations were

---

[6]  The district court emphasized the fact that "Ms. Riehle had received the top performance evaluation for her work with Marriott during the previous two years, receiving a '1' for her PAF rating."  Dist. Ct. Op. at 13 (emphasis added).  However, when this Court reviewed the record, as we must in reviewing a grant of summary judgment, it became clear that one of the "1s"

18

approximately one year apart (9/22/90, 9/18/91, and 9/21/92).  At oral argument, Marriott's counsel was asked why Riehle received a "semi-annual" evaluation in what appeared to be an annual review process when all of her prior evaluations and Bray's evaluations had been annual.  He could offer no explanation.  A factfinder should determine if Riehle was given an evaluation out of the normal sequence and, if so, why.

This record suggests that Riehle officially began as Director of Services on April 10, 1993,[7] the same date that she was given an evaluation of "1" for that position.  Since Riehle's PAF was updated in June 1993, it is conceivable that the rating of "1" was given at that time to reflect her performance in her new position.  However, that is not consistent with Nemetz's testimony.  Nemetz was deposed in November of 1994 and testified that Riehle was then due for an evaluation but that she had not yet been evaluated.[8]  Absent further explanation, a reasonable jury could conclude that Riehle was evaluated out of normal

---

had been awarded during a semi-annual review.  At oral argument, we asked counsel to explain why Riehle had been given a semi-annual review but he could not.

[7]  The record does not establish when Bray or Riehle was interviewed.  However, Riehle's Associate Profile, as updated on June 15, 1993, states that her position is Director of Services, and her "Date in Pos:" is 4/10/93.  The form also notes her weekly salary and states that the effective date of that rate is "4/10/93."

[8]  This is consistent with an annual evaluation occurring in November as Riehle's two other evaluations (excluding the April evaluation) also occurred during the month of November.

sequence in order to bolster her selection after Bray had been interviewed.  See, e.g., <u>Hampton v. Borough of Tinton Falls Police Dep't</u>, 98 F.3d 107, 114 (3d Cir. 1996) (where Board's policy of considering the past three years' evaluations allowed it to consider three evaluations of the White candidate who had received annual evaluations but six evaluations of the Black candidate who was evaluated semiannually, a factfinder must determine whether application of that policy was due to racial bias).

> The district court noted that
>> Ms. Riehle had received the top performance evaluation for her work with Marriott during the previous two years, receiving a "1" for her PAF rating.  Plaintiff, on the other hand, had never received a rating above "2" during the previous three years.  Thus, the most objective criteria clearly pointed to Ms. Riehle as the superior candidate.

Dist. Ct. Op. at 13-14.  However, this record only reveals two scores prior to the time Riehle was interviewed.  One was a "1," but the other was a "2."[9]  Therefore, on half of the two most recent evaluations prior to her promotion, Riehle did not do as well as she could have.  On the other hand, there is evidence that Bray's former supervisor, Richard Lesser, never gave anything higher than a "2" so that Bray received the highest

---

[9]  Nemetz testified that the profile that was updated in June of 1993 (the one referred to by the district court) was not the one he relied upon in ranking Riehle, and the one that he said he relied upon was not produced at his deposition.  App. at 238a.  This record does not establish what Riehle's three prior PAF ratings before her promotion were.

possible grade for each of the three evaluations in her employment profile. Lesser stated in his affidavit: "During my tenure as director of services, I had never given a PAF rating higher than a two to any manager that I was responsible to review." App. at 325a. The district court correctly noted that Lesser did not state that Bray would have received a "1" but for this policy and that Marriott was entitled to rely upon Riehle's higher score even if Bray's lower score resulted only from Lesser's individual grading practice. See Dist. Ct. Op. at 13-14 n.13. However, that does not answer whether Nemetz's failure to recognize that Bray had received the highest grade available was the result of a biased belief that she was not qualified rather than an objective evaluation of the PAF scores of both candidates. The district court also noted that Bray produced no evidence that anyone involved in the promotion knew that Lesser never awarded "1s." Dist. Ct. Op. at 13-14 n.13. Furthermore, Nemetz disputed whether Lesser ever gave a "1" and testified that he thought he recalled Lesser telling him that he had given a "1" to an employee on an evaluation. Dist. Ct. Op. at 13-14 n.13. Although there is a dispute about whether Lesser ever gave a "1," there is no dispute that he thought Bray should have been promoted. Lesser testified that he told Joosten that Bray was qualified for the promotion: "In my opinion, which I let known to Mr. Jooston and which Mr. Jooston was aware of, Beryl was more than qualified to take over my position as director of services

21

at the Park Ridge Marriott.  To this day, I cannot understand why she was not offered the position."  App. at 325a-26a.  We realize, of course, that Lesser never saw Riehle's application and may have thought her better qualified than Bray had he done so.  However, that is not the point.  There are enough disputed facts on this record concerning Bray's qualifications, the accuracy of Riehle's PAF scores, and Nemetz's view of Bray's ability to allow Bray to survive summary judgment.

2.  Experience

Bray argues that experience is the most important factor in promoting within Marriott and points to the fact that it is first among the criteria on the MCMS.[10]  Marriott argues that experience is one of many factors to be considered and that there is no particular order to the criteria that are evaluated.  The parties also argue about which applicant had the superior experience and how different types of experience should be valued.  The district court agreed with Marriott that Riehle's experience was superior to Bray's.  The court noted

> although Mr. Nemetz did not testify as to these subjects . . . this court notes that Ms. Riehle's educational background included a degree in Restaurant Hotel Management, . . . while plaintiff's college degree encompassed the fields of English and History. . . .  Further, . . . Ms. Riehle was twice awarded a "Manager of the Month" award . . . while plaintiff has pointed to no analogous awards.

---

[10]  The MCMS requires managers to "[c]ompare each candidates (sic) relevant work experience both pre- and post-Marriott." App. at 43a.

22

Dist. Ct. Op. at 6 n.8. However, if management did not consider these factors in evaluating the experience of the two candidates, the factors should not have been considered by the district court. The issue is not whether the court can find a legitimate reason why Marriott could have promoted Riehle but whether Marriott had a legitimate reason that was not the result of racial animus. "[T]he judge's function is not to weigh the evidence and determine the truth of the matter, but rather to determine if there is a genuine issue for trial. The district court cannot decide issues of fact at the summary judgment stage." Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 637 (3d Cir. 1993)(citation omitted).

Nemetz testified that, in ranking candidates, the first thing he looks at "is the latest rating that they received at their hotel." App. at 215a. When asked whether placing primacy on the PAF rating is a policy of Marriott, Nemetz acknowledged that it was "[n]ot a policy of anybody's. It's just if you're going to go for the best candidate, generally you do that by looking at a rating." App. at 215a. Bray, on the other hand, contends that "[i]t was common knowledge at the Marriott that experience was the number one criteria in deciding promotions." App. at 329a. While her belief alone is insufficient to raise an issue of material fact, see Fuentes v. Perskie, 32 F.3d 759, 766 (3d Cir. 1994)(the "not so" approach "does not create a material issue of fact"), it takes on added significance when combined

23

with that fact that "[experience] is the first criteria listed in the pamphlet provided for by the defendant, MCMS." App. at 329a-30a. The MCMS lists in the following order factors that should be considered in ranking candidates for a promotion: experience, PAF rating, training and education, relocation, and salary. Marriott suggests that this list is not in order of importance because it is preceded by the statement "The following are additional considerations to help rank the order of candidates." See Appellee Br. at 30; app. at 43a. Marriott may be correct. However, the order does suggest a certain priority. For example, it is implausible that Marriott intended relocation and salary considerations to outweigh or be given equal consideration with such factors as experience and the PAF rating. Thus, "Salary" and "Relocation" are listed last. Moreover, in the MCMS, this list of additional considerations is immediately preceded by the requirements of posting, the primary of which appears to be experience:

> Any associate who meets or exceeds the following minimum requirements for a job showing on the Job Availability Report will have the opportunity to have their name submitted (posted) should they wish to apply for the job:
>
> > a. Associate has spent at least 18 months in current position (Operations Supervisors and Managers only),
> >
> > OR
> >
> > b. Promotion eligibility date in MCMS indicates the

24

<blockquote>
associate is ready for promotion prior to 18 months in position,

AND

c.Associate has a 1 or 2 on last PAF rating. . . .

AND

d.Associate satisfies the minimum objective requirements for the position applied for as noted on the job profile in the <u>Career Planning Profile Guide</u>, and the applied for position is listed as one of the "possible next qualified positions" in the associate's MCMS profile.
</blockquote>

App. at 42a. A jury should determine whether there is any significance to the order of the factors in the MCMS, and, if so, whether Nemetz's failure to use that order was racially motivated. According to Joosten, Bray was more experienced than Riehle: "You are both equally qualified. You had the experience. She had the rating of a one." App. at 130a. In fact, Joosten suggested that Bray's experience might have hurt her: "And since you were -- since you had been there for a while we thought it wouldn't be an incentive for you." App. at 130a-31a. A jury certainly could conclude that improper racial animus caused Marriott to look unfavorably upon Bray's experience.

Bray also argues that Marriott violated its own policy in failing to give priority to her prior experience at the Park

25

Ridge in order to justify going outside that hotel to promote Riehle. Marriott counters by stating that Bray incorrectly states that its policy is to give priority in promotion decisions to applicants at the subject hotel. Marriott points to a letter from the Vice President of Human Resources for Marriott dated May 31, 1991. That letter states: "Keep in mind that there may be a number of qualified candidates for any one position and that, before searching outside of their region, <u>hiring managers will try to fill open positions first from within their own hotel or region</u>." App. at 296a (emphasis added).

Nevertheless, Richard Lesser stated unequivocally in his affidavit that "[i]t was common knowledge that one of the policies at Marriott was to promote from within the subject hotel if at all possible." App. at 326a. Marriott's contention is corroborated by Nemetz who testified that no preference was given to an applicant in the same hotel and that this distinction is not even a factor in promotional decisions.

Q: Is it a factor in making the decision as to who to promote, the fact that one individual is in the same hotel and one is not?

A: No.

Q: It's not even a factor?

A: No.

App. at 222a.

If Lesser is telling the truth, applicants from within were given priority in promotions at the Park Ridge despite Marriott's

26

policy to the contrary. Given Nemetz's view of Bray, a reasonable factfinder could conclude that managers at the Park Ridge stopped giving preference to candidates already at that hotel only when she was competing with a candidate from another Marriott in the same region. Of course, a factfinder could certainly conclude that Lesser was simply mistaken about the hiring policy at the Park Ridge Marriott, but that is not for us to decide. If a factfinder were to conclude that the policy prior to Bray's application was consistent with what Lesser thought was "common knowledge," Bray's interview takes on increased significance. It would further establish that her experience had been evaluated in a manner that made her the top-ranked candidate for the promotion. It would also be consistent with Bray's testimony that she was led to believe during the interview that Marriott considered her the top candidate, and she was advised that her first decision would be to hire a housekeeping manager. App. at 328a.

3. Occupational Grade Levels

The district court noted that the occupational grade levels of 45 and 43 for Riehle and Bray respectively meant that "Ms. Riehle had attained the position of Assistant Director of Services at the New York Marquis Marriott while plaintiff had only risen to the level of Housekeeping Manager at the Park Ridge Marriott." Dist. Ct. Op. at 6 (emphasis added). The court repeatedly notes that Bray had "only" attained the level of

27

Housekeeping Manager at the Park Ridge while Riehle had earned the title of Assistant Director of Services at the New York Marquis Marriott. See Dist. Ct. Op. at 14, 15, 18. However, Nemetz testified in his deposition that there was no difference in these job classifications. "It is based on the size of the hotel" with bigger hotels calling the position "Assistant Director of Services" and smaller hotels calling it "Housekeeping Manager." App. at 239a. Nemetz even conceded that Bray could not have held a higher position than the one she had without the promotion she was seeking as that was the only position above Housekeeping Manager at her hotel.

Marriott is certainly entitled to give Riehle's job title greater weight than Bray's even if the only difference in titles is the size of the hotels where they were working. However, Marriott may not do so if racial bias colored how her grade level would be valued. We do not say that this is what happened here only that sufficient issues of fact exist to preclude the entry of summary judgment. We do not doubt that a reasonable factfinder could accept all of Marriott's explanations and conclude that Riehle was promoted over Bray simply because Riehle was the superior candidate based upon all of the criteria Marriott says it used to make the decision. However, this record does not compel that result as a matter of law.

> The significance of such evidence is for a jury's
> determination, not a court's. Had these
> discrepancies been presented to a jury, it
> may have found defendants' explanations quite
> credible, and returned a verdict in their

28

favor. However, that is not the test that we employ, nor is it the test the district court should have employed. Drawing all reasonable inferences in favor of plaintiffs, as we must, it is clear that they were entitled to have a jury decide whether or not the reasons proffered . . . were real or pretextual.

Hampton v. Borough of Tinton Falls Police Dep't, 98 F.3d at, 115. Thus, we will reverse the district court's grant of summary judgment.

## IV.

The allocation of the burden of proof and the role of plaintiff's prima facie case as first set forth in Fuentes and more recently reaffirmed in Sheridan is equally applicable to a NJLAD claim. Romano v. Brown & Williamson Tobacco Corp., 665 A.2d 1139 (N.J. Super. App. Div. 1995). Romano applies the Fuentes standard of review at summary judgment for Title VII cases to NJLAD claims. Id. at 1143-44. Thus, our discussion of Bray's Title VII claim also applies to her NJLAD claim, and, for the reasons provided above, we find that Bray's NJLAD claim should have survived summary judgment as well.

## V.

For the above reasons, we will reverse the grant of summary judgment to Marriott on Bray's Title VII and NJLAD claims and remand to the district court for further proceedings consistent with this opinion. In granting summary judgment for defendant, the district court also dismissed Bray's related state law claims. Upon remand, the court will once again consider these

29

claims.

ALITO, Circuit Judge, dissenting:


In Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994), we laid out the evidentiary requirements a plaintiff has to satisfy in order to survive a motion for summary judgment in a "pretext" employment discrimination case under Title VII.  We held that where the employer has proffered a legitimate reason for its employment action, the plaintiff must submit evidence that either:

(1) casts sufficient doubt upon each of the legitimate
    reasons proffered by the defendant so that a factfinder
    could reasonably conclude that each reason was a
    fabrication; or


(2) allows the factfinder to infer that discrimination was
    more likely than not a motivating or determinative
    cause of the adverse employment action.

Id. at 762 (emphasis added).  In Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1067 (3d Cir. 1996), petition for cert. filed, 65 U.S.L.W. 3571 (Feb 03, 1997) (No. 96-1231), the en banc court reaffirmed Fuentes.  I dissent here because I do not see the plaintiff, Beryl Bray, as having met the Fuentes evidentiary burden for showing pretext.

    In the district court, Bray argued that she was entitled to

30

survive Marriott's summary judgment motion because she had satisfied both prongs of the two-prong Fuentes test.  On prong one, which involves discrediting the employer's proffered legitimate reasons for the employment decision, Bray's argument was that she "exceeded Ms. Riehle [her competitor, who was promoted instead] in every objective test that could be employed to evaluate the two candidates and that the only criteria under which Ms. Riehle exceeded plaintiff involved subjective inquiries which are simply not credible."  (Dist. Ct. Op. at 17–18).  On prong two, which requires plaintiff to show that racial discrimination was more likely than not a motivating or determinative cause of the adverse employment decision, Bray pointed to a document setting forth the minority hiring goals of the Park Ridge Marriott, and alleged that the failure to meet these goals made it "more probable than not that racial discrimination was a motivating or determinative factor in her rejection for the position of Director of Services."  (Dist. Ct. Op. at 21).  The district court found Bray's arguments insufficient on both prongs and granted the Marriott's motion for summary judgment.

As I read Bray's brief on appeal, she is challenging the district court's determination on prong one.  She says she has "pointed to enough weaknesses, implausibilities, inconsistencies, incoherences or contradictions in the employer[']s proffered legitimate reasons to overcome summary judgment regarding plaintiff's Title VII claim."  (Appellant's Br. at 2).

31

Marriott's proffered legitimate reason for why it promoted Therese Riehle over Bray was that Riehle was better qualified. Bray counters with the assertion that the evidence shows that her qualifications were so much better than those of Riehle that "there is no reasonable explanation as to why Riehle was given the position over Beryl Bray other than using race as a consideration."[11]  (Appellant's Br. at 6).

What kind of evidence does prong one require?  The prong one requirement is that plaintiff has to point to "evidence, either direct or circumstantial, from which a factfinder could reasonably . . . disbelieve the employer's articulated reasons." Fuentes, 32 F.3d at 764.  Fuentes explains that:

To discredit the employer's proffered reason, however, the

plaintiff cannot simply show that the employer's reason was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.  Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate reasons for its

---

[11]Bray's ultimate burden at trial will be to demonstrate that intentional racial animus was the reason for her non-promotion -- in effect, a requirement that she demonstrate prong two of the Fuentes test.  See Henry L. Chambers, Getting it Right: Uncertainty and Error in the New Disparate Treatment Paradigm, 60 Alb. L. Rev. 1, 31 (1996).  However, at the summary judgment stage Bray needs only to demonstrate her prima facie case and prong one.  See Fuentes, 32 F.3d at 764.

32

action that a reasonable factfinder could rationally find them unworthy of credence.

Id. at 765 (internal citations and quotations omitted).

Fuentes tells us that the burden on a plaintiff who chooses to proceed under prong one is a "difficult" one. Id. at 765. That the burden under prong one is "difficult" makes sense because plaintiff is attempting to indirectly produce an inference of intentional discrimination out of the fact that the employer's proffered reason was untrue. Hence, where, as is the case here, the defendant asserts that it made the choice among candidates that it did because it wanted the "best qualified" candidate, plaintiff would have to point to evidence that showed either (1) that the defendant's selection process and criteria were filled with such inconsistencies that the employer's claim that it was seeking the "best qualified" candidate was a sham or (2) that the qualifications of the person actually promoted were so much lower than those of her competitors that a reasonable factfinder could disbelieve the claim that the employer was honestly seeking the best qualified candidate.

It is crucial to understand that prong one is not satisfied if plaintiff merely points to evidence that shows that her qualifications were roughly comparable to those of her competitors. Nor is prong one satisfied by evidence that the employer is not "fair" or "kind" as a general matter. Prong one requires that plaintiff point to evidence from which a reasonable

33

factfinder can "disbelieve the employer's articulated reasons." Fuentes, 32 F.3d at 764 (emphasis added). "Disbelieve" is a higher standard than "disagree." It is not enough for the evidence to be such that a reasonable factfinder could disagree with the employer as to which candidate was better qualified. Instead, the evidence must be such that a reasonable factfinder can infer that the employer was not truly looking for the best qualified candidate, i.e., that the employer's articulated legitimate reason was pretextual. The burden on a plaintiff seeking to proceed on prong one is difficult, but as Fuentes explains, "'[i]t arises from an inherent tension between the goal of all discrimination law and our society's commitment to free decisionmaking by the private sector in economic affairs.'" 32 F.3d at 765 (quoting Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 531 (3d Cir. 1992), cert. denied, 510 U.S. 826 (1993)).

Moving back to the case at hand, Bray's burden under prong one was to show either that there were so many inconsistencies in the criteria and procedures that Marriott used in its selection process that a reasonable factfinder could infer that the process was a sham and was not aimed at finding the best qualified candidate, or that Bray herself was so much better qualified than Riehle for the job in question that a reasonable factfinder could conclude that Marriott did not, in fact, honestly believe that Riehle was better qualified than Bray. I dissent because the majority has not come close to holding Bray to her burden under

34

prong one and has thereby impermissibly diluted Fuentes' prong one requirements for crossing summary judgment.

The majority here, after articulating the prong one test from Fuentes, goes on to cite Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 638–39 (3d Cir. 1993), for the proposition that "[a]n inference of pretext may arise if the plaintiff can raise suspicions with respect to the defendant's credibility or the employer's treatment of the employee." Maj. Op. at 8 (emphasis added). Relying upon this statement derived from Josey, the majority identifies evidence from which a factfinder could conclude that Marriott may have treated Bray unfairly in not following the proper internal firm processes in rejecting her. I acknowledge that this evidence does literally satisfy the statement that "[a]n inference of pretext may arise if the plaintiff can raise suspicions with respect the defendant's credibility or the employer's treatment of the employee." Maj. Op. at 8 (citing Josey, 996 F.3d at 638–39) (emphasis on a term added by majority). But that statement has to be read in context. The relevant context is that the evidence of "suspicion" has to be such that it could allow a reasonable factfinder to conclude that the employer's proffered reason for the non-promotion was a lie. That the plaintiff has been able to identify evidence showing that the employer did not follow the proper internal procedures, or that the employer was not completely truthful in its depositions, should not by itself enable the plaintiff to cross the summary judgment hurdle if the

35

identified evidence would not enable a reasonable factfinder to conclude that the employer's proffered reason for denying the promotion was _false_.  In other words, so long as Bray is proceeding on prong one, she is required to point to evidence from which a reasonable factfinder could infer that Marriott did not honestly believe that Riehle was better qualified than Bray.

To me, the evidence in this case shows two things -- (1) that the qualifications of Bray and Riehle for the Director of Services position they were seeking were roughly equal and (2) that Marriott may have treated Bray unfairly by not following its own internal procedures as to giving her proper notice that she had been rejected and failing to give her a proper explanation for her rejection.  If we had a case where the only evidence was that the competing employees had qualifications that were roughly similar and the job in question was a service-sector managerial position, such as the one here, the case would be easy.  In such service-sector managerial jobs the qualifications of the candidates are often no more than loosely correlated with the position to which the candidates are seeking promotion, and the qualifications being weighed tend to include subjective internal evaluations of the candidates as important components of the final determination.  In such a case, unless the qualifications of the candidates are extremely disproportionate, it is hard to see how a district court could deny summary judgment to an employer who claims that it, _in its business judgment_, thought one candidate was better qualified than the other.  Cf. Ezold,

36

983 F.2d at 527 (cautioning against "'unwarranted invasion or intrusion' into matters involving professional judgments about an employee's qualifications for promotion").

The majority's claim, however, is that there is more than merely evidence as to the candidates' qualifications that shows them to be roughly equal. The claim is that there is evidence of such inconsistencies and discrepancies in the selection process that it would allow a reasonable factfinder to disbelieve Marriott's claim that it promoted Riehle because it thought her to be best qualified. I will list that evidence and attempt to show why it does not bring into question Marriott's claim that it promoted Riehle because it thought she was better qualified than Bray.

First, Marriott had a procedure for in-house promotions whereby, upon conclusion of a screening of the candidates, only one person could be chosen for a personal interview with the hiring manager. Maj. Op. at 11. After this interview, the hiring manager had to decide whether to hire the candidate before conducting further interviews. Maj. Op. at 11. Bray claims, and we take that claim as fact, that she was interviewed for the Director of Services position first. Maj. Op. at 12. Therefore, before Marriott could conduct subsequent interviews, its internal procedures required it to reject Bray first. Maj. Op. at 12. However, Bray did not learn that she had been turned down for the position until after Riehle had been interviewed and offered the job. Maj. Op. at 12.

37

This evidence does not show any more than the fact that Marriott did not comply with its internal rules by failing to inform Bray that she had been rejected before interviewing and hiring another candidate. The majority, however, sees this evidence as combining with other evidence from depositions to warrant reversal of the district court's grant of summary judgment to Marriott.

The second piece of evidence identified by the majority is that Leo Nemetz, the General Manager at the Park Ridge Marriott, testified at his deposition, with respect to Bray, that:
I thought she was an excellent employee who was a

> maintainer. <u>If I thought she was capable of doing the</u>
> <u>job, I may have given it to her</u>. But I was looking for
> the best qualified candidate.

Maj. Op. at 13 (emphasis added by majority). The majority latches on to the statement of Nemetz that he did not think Bray "capable of doing the job," and claims that the statement was so clearly erroneous that a factfinder could have concluded that there was illegal bias in the selection process. Maj. Op. at 13. I utterly fail to see this. As a literal matter Nemetz appears to have been in error in suggesting that Bray was not "capable of doing the job." But in his very next statement, he qualified what he had said about Bray by explaining: "[b]ut I was looking for the <u>best qualified</u> candidate." Maj. Op. at 13 (emphasis added). This latter statement implies that Nemetz thought that

38

Bray was not the "best" among the candidates, and that that was what he meant by stating that Bray was not qualified -- as opposed to Nemetz thinking that Bray did not possess the minimal qualifications necessary to perform the job. But the majority ignores Nemetz's explanation that he was looking for the "best qualified candidate." For me, Nemetz's explanation makes it clear that the former statement, "[i]f I thought she was capable of doing the job, I may have given it to her" was no more than loose language. That this was no more than loose language is confirmed by the fact that Nemetz, upon being pressed by Bray's counsel as to whether he really meant that Bray did not possess the minimal qualifications for the job, withdrew that statement. Maj. Op. at 13-14. The majority, however, isolates the "[not] capable of doing the job" language and concludes that there is evidence from which it could be inferred that the employer was not truly looking for the "best qualified candidate."

In any event, it does not matter whether Nemetz was in error in stating that he thought Bray was not qualified. The issue is whether Marriott was not credible in its proffer that it honestly thought Riehle to be the "best qualified" candidate. I fail to see how pointing to loose language in a deposition satisfies this burden.

The majority then proceeds to identify another piece of evidence that it says casts "[f]urther doubt . . . upon the selection process." Maj. Op. at 14. This evidence is deposition testimony by Nemetz that Riehle had been "unanimously" selected

39

by a three-member selection committee as the number one candidate.  Maj. Op. at 14.  Later, Nemetz modified his position to explain that one of the three members, George Joosten, had asked to stay out of the decision.[12]  Maj. Op. at 14.  What would this evidence show a reasonable factfinder?  It does not attack or bring into doubt any of Riehle's qualifications.  Instead, all it shows is that Nemetz, once again, was loose with his characterization of the facts as to the selection process.  However, unless the evidence goes to undermine Marriott's assertion that it thought Riehle was better qualified and promoted her for that reason, Bray should lose at summary judgment.[13]

---

[12]There is no evidence that Joosten opposed Riehle's promotion.  In fact, after Riehle was hired, he told Bray:

> You are both <u>equally qualified</u>.  You had the experience.
> She had the rating of a one.  And since you were --
> since you had been there for a while we thought it
> wouldn't be an incentive for you.

Maj. Op. at 14-15 (emphasis added).  If anything, it appears from Joosten's explanation that he did not find his two colleagues' determination that Riehle was the better qualified candidate problematic, even though he thought the two candidates were equally qualified.

[13]In addition, there was testimony from the Park Ridge Marriott's former Director of Services, Richard Lesser, that "it was common knowledge that one of the policies at Marriott was to promote from within the subject hotel, if at all possible."  Maj. Op. at 25.  Marriott disputes this claim, but even if taken as true it would not go to attack Riehle's qualifications or Marriott's claim that it thought Riehle better qualified.  As with the other evidence identified by the majority, this piece merely goes to show that Bray was not afforded the proper internal process in her rejection.  But anti-discrimination law does not attempt to police fairness in employment as a general matter, but rather only polices the narrow area of intentional discrimination in employment decisions.

40

I will not test the reader's patience by describing the comparative evidence as to Bray's and Riehle's qualifications. I merely reiterate that while the evidence may not show that Riehle was clearly the superior candidate, as the district court thought, it shows that the candidates were approximately equal in qualifications. Reasonable people could probably differ on their thoughts as to which candidate was better qualified, but that is not the question. Instead the question in this prong one analysis is whether a reasonable factfinder could determine, based on the evidence, that Marriott could not have honestly thought that Riehle was better qualified. Given the subjective nature of many of the qualifications being considered and the amorphous nature of the question of what qualifications were needed to perform the specific job for which promotion was being sought, I do not see how a reasonable factfinder could find that Marriott did not honestly think Riehle to be better qualified. The inconsistencies and discrepancies that Bray identified were too minor and the qualifications of the candidates too similar for a reasonable factfinder to determine that Marriott was lying when it stated that Riehle was selected because Marriott believed she was more qualified.

There is only one piece of evidence that the majority points to that I see as directly attacking Marriott's claim that it thought Riehle was better qualified. Nemetz testified that Riehle's higher performance ratings ("PAFs") were a crucial factor in Marriott's thinking that Riehle was better qualified

41

than Bray.  Maj. Op. at 17.  It is undisputed that Riehle's raw PAF scores were higher than those of Bray.  Riehle had two scores of "1" and one of "2," whereas all of Bray's scores were "2s." But the majority has found evidence in the record that it views as showing these scores to be suspicious.  What the majority has found is that one of Riehle's evaluations was a "semi-annual" evaluation, as opposed to the normal "annual" evaluation.  Maj. Op. at 18.  This, the majority suggests, puts the PAF scores under suspicion.

I agree that if indeed Riehle was given an additional, unscheduled and unexplainable review, it looks like an <u>improper bolstering of credentials</u>, and could make it somewhat plausible for a factfinder to conclude that Marriott did not think that Riehle was, in fact, better qualified.  But I can find no mention of this "semi-annual" review, let alone any argument based on it, anywhere in Bray's briefs.[14]  Nor can I find reference to this point in the papers opposing summary judgment that Bray filed in the district court.  I believe it is problematic to attach importance to inferences that could be drawn from evidence that the parties have not had an opportunity to adequately consider

---

[14]Issues not raised are waived.  <u>See</u> <u>Laborers' Int'l Union of N. Am. v. Foster Wheeler Energy Corp.</u>, 26 F.3d 375, 398 (3d Cir.) ("An issue is waived unless a party raises it in its opening brief, and for those purposes `a passing reference to an issue . . . will not suffice to bring that issue before this court.'" (citation omitted) (ellipsis in original)), <u>cert. denied</u>, 115 S. Ct. 356 (1994); <u>see</u> <u>also</u> <u>Commonwealth of Pa. Dept. of Public Welfare v. United States Dept. of Health and Human Services</u>, 101 F.3d 939, 945 (3d Cir. 1996).  However, what we are talking about here is evidence that was not mentioned, as opposed to a legal argument not raised.

42

and explain.

We asked Marriott's counsel about the "semi-annual" review at oral argument and he did not have an explanation. Maj. Op. at 18 n.6. But Marriott's counsel had probably never asked his client to explain the "semi-annual" review to him. My unease with attaching too much significance to counsel's failure to explain is further amplified by the fact that Marriott's counsel at trial had passed away in the period between trial and appeal, and counsel on appeal was new.

In sum, the evidence here shows (1) that the two applicants were of roughly equal qualifications with respect to the job for which they were seeking promotion and (2) that the employer may have acted unfairly in failing to follow proper internal procedures in rejecting one of the candidates. Under existing anti-discrimination law, evidence of unfairness in the selection process alone, <u>without evidence linking the unfairness to race-based animus</u>, should not be enough to get a plaintiff beyond summary judgment, <u>so long as the employer's proffered legitimate reason for the employment decision remains intact</u>. I respectfully suggest that what the majority here has done is to weaken the burden on the plaintiff at the pretext stage of the <u>McDonnell Douglas</u> framework to one where all the plaintiff needs to do is to point to minor inconsistencies or discrepancies in terms of the employer's failure to follow its own internal procedures in order to get to trial. I have no doubt that in the future we are going to get many more cases where an employer is

choosing between competing candidates of roughly equal qualifications and the candidate who is not hired or promoted claims discrimination.  I also have little doubt that most plaintiffs will be able to use the discovery process to find minor inconsistencies in terms of the employer's     having failed to follow its internal procedures to the letter.  What we end up doing then is converting anti-discrimination law into a "conditions of employment" law, because we are allowing disgruntled employees to impose the costs of trial on employers who, although they have not acted with the intent to discriminate, may have treated their employees unfairly.  This represents an unwarranted extension of the anti-discrimination laws.