**Edward D. PATTERSON, Plaintiff,**

**v.**

**ALLTEL INFORMATION SERVICES, INC., Defendant.**

**Civil No. 95–188–P–C.**

United States District Court,
D. Maine.

March 15, 1996.

Kate S. Debevoise, Bernstein, Shur, Sawyer & Nelson, Portland, Maine, for Plaintiff.

William J. Kayatta Jr., Fall Ferguson, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, Maine, for Defendant.

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GENE CARTER, Chief Judge.

Plaintiff Edward D. Patterson sues Defendant Alltel Information Services, Inc. ("Alltel"), alleging that Alltel violated the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), and the Maine Family and Medical Leave Requirements, 26 M.R.S.A. § 843 *et seq.* ("FMLR"), by discharging him in a reduction in force one month after his medical leave of absence. Now before this Court is Alltel's Motion for Summary Judgment (Docket No. 10) ("Defendant's Motion"). For the reasons stated below, that motion will be granted.

## I. SUMMARY JUDGMENT STANDARD

The Court of Appeals for the First Circuit has recently explained once again the workings and purposes of the summary judgment procedure:

> Summary judgment has a special niche in civil litigation. Its "role is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1st Cir.1992), *cert. denied,* 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993). The device allows courts and litigants to avoid full-blown trials in unwinnable cases, thus conserving the parties' time and money, and permitting courts to husband scarce judicial resources.

> A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, to-

gether with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c)....

Once a properly documented motion has engaged the gears of Rule 56, the party to whom the motion is directed can shut down the machinery only by showing that a trialworthy issue exists. *See National Amusements [v. Town of Dedham]*, 43 F.3d [731,] 735 [ (1st Cir.1995) ]. As to issues on which the summary judgment target bears the ultimate burden of proof, she cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Garside [v. Osco Drug, Inc.]*, 895 F.2d [46,] 48 [ (1st Cir. 1990) ]. Not every factual dispute is sufficient to thwart summary judgment; the contested fact must be "material" and the dispute over it must be "genuine." In this regard, "material" means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. *See [United States v.] One Parcel [of Real Property with Buildings]*, 960 F.2d [200,] 204 [ (1st Cir.1992) ]. By like token, "genuine" means that "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party...." *Id.*

When all is said and done, the trial court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor," *Griggs–Ryan [v. Smith]*, 904 F.2d [112,] 115 [ (1st Cir.1990) ], but paying no heed to "conclusory allegations, improbable inferences, [or] unsupported speculation," *Medina–Munoz [v. R.J. Reynolds Tobacco Co.]*, 896 F.2d [5,] 8 [ (1st Cir.1990) ]. If no genuine issue of material fact emerges, then the motion for summary judgment may be granted.

... [T]he summary judgment standard requires the trial court to make an essentially legal determination rather than to engage in differential factfinding....

*McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 314–15 (1st Cir.1995).

## II. MATERIAL FACTS

Plaintiff Edward D. Patterson was employed by Defendant Alltel or its predecessor corporation from January 3, 1984, until June 22, 1995. Affidavit of Edward D. Patterson (Docket No. 15) ¶ 4 ("Patterson Aff."). In June of 1993, Patterson was transferred within Alltel from an Account Manager position in Fort Wayne, Indiana, to a higher level Account Manager position in Lewiston, Maine. *Id.* ¶ 6. Patterson's new position involved various management and supervision responsibilities over all sixty-nine Alltel employees at the Peoples Heritage Bank Data Center in Lewiston. *Id.* ¶ 6–8.

In November of 1993, Wayne C. Franz, Patterson's supervisor at Alltel, met with Joseph C. Hanson and Peter Verrill, two executives from Peoples Heritage with supervisory responsibilities over the Lewiston Data Center. Affidavit of Wayne C. Franz (Docket No. 11) ¶ 6 ("Franz Aff."). Hanson and Verrill indicated to Franz dissatisfaction with Patterson's performance but did not then request his replacement. *Id.* ¶ 6. Soon thereafter, Hanson sent Franz and Patterson a letter dated November 22, 1993, confirming both the occurrence and content of that conversation.[1] Franz Aff. ¶ 6–7, Exhibit A; Patterson Aff. ¶ 9. On receiving the letter, Patterson called Franz to discuss it. Patterson Aff. ¶ 10. Franz downplayed the seriousness of the problem but encouraged Patterson to take a more aggressive leadership role at the Data Center. *Id.*

The results of Patterson's client satisfaction surveys, which he received in the summer of 1994, indicated that his additional

---

1. Alltel has produced a copy of Hanson's letter of November 22, 1995, memorializing his conversation with Franz regarding his complaint with Patterson. Franz Aff. Ex. A. Patterson admits to receiving the letter and even discussing it with Franz. Patterson Aff. ¶ 9–10. Accordingly, this Court finds surprising Plaintiff's insistence that there exists a genuine issue of fact regarding whether "as early as November, 1993, executives at the bank began to complain to Mr. Franz that Mr. Patterson was not meeting expectations." Plaintiff's Objection at 1–2.

efforts had not satisfied Peoples Heritage executives. Deposition of Edward D. Patterson, Sept. 1, 1995, at 35–39 ("Patterson Depo."). In or around June of 1994, Franz began to consider replacing Patterson after Hanson continued to express serious concerns about Patterson's performance. Franz Aff. ¶ 9. In or around September of 1994, Marion Suro, Franz's manager at Alltel at the time, visited the Lewiston Data Center herself and met with Hanson and Verrill, who requested then for the first time that Patterson be replaced. *Id.* ¶ 12. At an early October conference between Franz, Suro, and Verrill, that request was repeated, and initial steps toward Patterson's replacement were planned. *Id.* ¶ 13. Franz began searching for Patterson's replacement in late October after visiting the Data Center himself to confirm the propriety of that decision. *Id.* ¶¶ 14–15. In January of 1995, Franz's new manager, Mike Hill, instructed Franz to replace Patterson as soon as possible. *Id.* ¶ 16.[2]

On February 8, 1995, Franz met with Patterson and told him that Peoples Heritage wanted, and Alltel agreed, to replace him in the Lewiston Account Manager position; that he should start looking for another position within Alltel; that he could accept immediately any such position he might find; that he could continue as the Lewiston Account Manager until Alltel found a replacement for him. Patterson Aff. ¶ 15; Patterson Depo. at 47–48, 76–77. Patterson also understood that if Alltel found a replacement before he could find another position within Alltel, he would continue searching while performing special projects as needed. Patterson Depo. at 76–78. Although Franz did not then present Patterson with the written version of his annual evaluation, Franz brought to Patterson's attention several specific managerial problems at the Data Center, including financial problems, client dissatisfaction, and difficulty in dealing with a particular employee.[3] Patterson Aff. ¶ 15; Patterson Depo. at 55–56.

On or about February 24, 1995, Patterson's physician instructed him to take a one-month leave from work to help treat severe symptoms caused by work-related stress. Patterson Aff. ¶ 16. On February 27, 1995, Patterson began his leave after conversations with Franz and with Alltel Personnel Manager Susan Bradley. Patterson Aff. ¶ 17–18; Patterson Depo. at 73–75. Shortly thereafter, Patterson filed the proper forms with Alltel and received a letter approving his leave. Patterson Aff. ¶¶ 18–19. Near the end of March, on the advice Patterson's physician, Patterson requested and Alltel granted an extension of his leave to April 28, 1995. *Id.* ¶¶ 21–22. Patterson returned to work on May 3, 1995, after his physician indicated that he was fit to work full time and to travel. *Id.* ¶ 26.

Upon his return, Patterson resumed his search for another position within Alltel but felt he no longer had the full support of Franz in that endeavor.[4] Patterson Depo. at 101–02; Patterson Aff. ¶ 27. By then, Alltel had completed its search for another Account Manager to replace Patterson at the Lewiston Data Center. Patterson Depo. at 100–01. Accordingly, Patterson performed vari-

---

**2.** Patterson emphasizes that neither Franz nor Suro apprised Patterson of these developments as they occurred. Patterson Aff. ¶ 13. Although Patterson's lack of this knowledge may explain part of his dismay upon being told on February 8 of Alltel's decision to remove him from the Lewiston Account Manager position, it does not create a genuine issue as to any material fact.

**3.** The combination of Franz's written evaluation, Patterson's admission in deposition, and Patterson's failure to provide any contrary evidence establishes that the written evaluation reflects the same managerial problems as communicated in the February 8 conversation between Franz and Patterson. Franz Aff. Exhibit B; Patterson Depo. at 89–90. Patterson nevertheless persists in arguing that there exists a genuine issue of fact as to whether "Mr. Franz discussed the substance of Mr. Patterson's upcoming performance review and the ways in which his performance had led to client dissatisfaction with Mr. Patterson t their meeting on February 8, 1995." Plaintiff's Objection at 2. This Court rejects Patterson's contention.

**4.** Patterson also claims that, upon his return, he was told "that if [he] was unable to find a position, [he] might receive a 'tap on the shoulder.'" Patterson Aff. ¶ 27. Assuming, without deciding, that this constitutes an element of Patterson's "position of employment," Patterson has admitted that it was also true before his FMLA leave. Patterson Depo. at 60. Because that aspect of Patterson's employment remained the same before and after his leave, it is irrelevant under the FMLA.

ous special projects as needed, enjoying the same salary and benefits as before his leave. Patterson Depo. at 100, 102–06. On June 1, 1995, Franz provided Patterson with a copy of his March 1994–February 1995 annual written performance evaluation, which embodied the same concerns over Patterson's managerial shortcomings and client dissatisfaction with them that Franz and Patterson had discussed on February 8. Patterson Aff. ¶ 29. *See supra* note 3.

On June 6, 1995, Alltel undertook a company-wide reduction in force. Franz Aff. ¶ 35. Franz met with Patterson on June 8 to notify him that he was among those to be laid off. Patterson Aff. ¶ 30. Patterson's discharge became effective on June 22, 1995. *Id.*

## III. DISCUSSION

The primary issue presented on Defendant's motion is whether, under the FMLA, Patterson held the same "position of employment" before and after his medical leave. Defendant's Motion at 7; Plaintiff's Objection at 7. That issue is not one of fact, but one of law suitable for decision on summary judgment.[5] This Court now turns to that legal issue.

The FMLA provides that a covered employer must allow an eligible employee up to twelve workweeks of family or medical leave during any twelve-month period. 29 U.S.C. § 2612(a).[6] At the end of such a leave, the

FMLA requires an employer to restore the employee "to the position of employment held by the employee when the leave commenced" or to an equivalent position. *Id.* §§ 2614(a)(1)(A), (B).[7] The FMLA expressly does *not* require, however, that an employer provide the returning employee "any right, benefit, or position of employment other than the right, benefit, or position to which the employee would have been entitled had the employee never taken leave." *Id.* § 2614(a)(3)(B).[8] *See* 29 C.F.R. § 825.216(a) ("An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period.")

Patterson claims that Alltel violated the FMLA by failing to restore him to the same "position of employment" he held at the beginning of his FMLA leave. Plaintiff's Objection at 8. Although Patterson admits that it was ultimately the "reduction in force that cost him his job," he alleges that the difference in his position after his leave caused him to be included in the reduced part of the force when he otherwise would not have been. *Id.* at 10. Alltel responds that it did restore Patterson to the same "position of employment" upon his return, so that there was no difference in his position potentially to affect its later decision to let him go in the reduction in force.

---

**5.** Despite Plaintiff's contention, Defendant and Plaintiff agree in all relevant respects regarding what occurred before, during, and after Patterson's leave. Plaintiff's Objection at 7. Defendant and Plaintiff disagree only regarding the legal implications of those occurrences.

**6.** Section 2612(a)(1) provides in relevant part:
   *(1) Entitlement to leave*
   Subject to section 2613 of this title, an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month period for one or more of the following:

   .    .    .    .    .

   (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

**7.** Section 2614(a)(1) provides:
   (a) **Restoration to position**
   (1) In general
   Except as provided in subsection (b) of this section, any eligible employee who takes leave under section 2612 of this title for the intended

purpose of the leave shall be entitled, on return from such leave—
   (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or
   (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

**8.** Section 2614(a)(3) provides in relevant part:

   (a) **Restoration to position**

   .    .    .    .    .

   (3) Limitations
   Nothing in this section shall be construed to entitle any restored employee to—

   .    .    .    .    .

   (B) any right, benefit, or position of employment other than any right benefit or position to which the employee would have been entitled had the employee not taken leave.

This Court agrees with Alltel that, at the end of Patterson's leave, Alltel restored him to the same "position of employment" he held when his leave commenced. The terms and conditions of Patterson's "position of employment" with Alltel, both before and after leave, may be described as follows: (1) Alltel provided Patterson with certain salary and benefits; (2) Alltel had decided to replace Patterson as Lewiston Account Manager; (3) Patterson was required to search for, and was free to accept immediately, another job within Alltel; (4) Patterson would serve temporarily as Lewiston Account Manager until Alltel found a replacement for him; (5) if Alltel found a replacement before Patterson found another position within Alltel, Patterson would perform special projects as needed. Any other aspect of Patterson's relationship to Alltel that changed during his leave either was not an element of his "position of employment" under the FMLA, or was an element to which he would not have been entitled had he not taken leave.

■ Patterson contends, for example, that two circumstances that occurred after his leave—Franz's giving Patterson both less support in his internal job search and a poor performance evaluation—constitute changes in Patterson's "position of employment" under the FMLA. Plaintiff's Objection at 6, 8. Plaintiff identifies, and research reveals, no provision of the FMLA or its implementing regulations that warrant defining an employee's "position of employment" so broadly as to include the extent of managerial support or of affirmation in performance evaluations. This Court discerns in the FMLA no purpose to guarantee employees either that they will perceive similarly strong support from their managers before and after leave, or that they

will receive similarly strong performance evaluations before and after leave. *See* 29 U.S.C. § 2601(b). This Court therefore rejects Patterson's contentions to that effect.

■ Patterson argues more plausibly that Alltel did not restore him to the same "position of employment" at the end of his leave because Alltel did not restore him to the position of Account Manager that he occupied at the beginning of his leave. The Account Manager position, however, is not a "position to which [Patterson] would have been entitled had [he] never taken leave." 29 U.S.C. § 2614(a)(3)(B). Patterson was no longer entitled to that "position of employment" once Alltel made its final decision to replace him. It is undisputed in the record that Alltel reached that decision no later than February 8, 1995, almost three weeks before Patterson requested and began his leave.[9] Because Patterson lost his Account Manager position before he even requested his leave, his leave could not have caused him to lose his Account Manager position.[10] Therefore, the Account Manager position is not one to which Patterson would have been entitled had he never taken leave and is not one to which Alltel is required to restore Patterson under the FMLA. Alltel's not restoring Patterson to the Account Manager position, then, does not violate the FMLA.[11]

## IV. CONCLUSION

Accordingly, it is *ORDERED* that Defendant's Motion for Summary Judgment be, and it is hereby, *GRANTED*.

**9.** The fact that Alltel *implemented* that decision during Patterson's leave is irrelevant to his rights under the FMLA; only the timing of the *final decision* to replace him is relevant. Nor is there any relevance under the FMLA to the fact that Patterson's leave incidentally shortened that period of time, between the decision to replace him and the unforeseen reduction in force, within which he could have actively conducted his internal job search.

**10.** Nor, then, could Patterson's leave have caused him to lose his job altogether in the June reduction in force. Even assuming (as Patterson contends without evidentiary support) that Pat-

terson's not holding an Account Manager position in June was the decisive factor causing his layoff, if his leave did not cause him to lose his Account Manager position, then his leave did not cause his layoff.

**11.** The FMLA and FMLR are similar in all respects relevant to the disposition of this motion. *See* 26 M.R.S.A. § 843 *et seq.* Neither party has even suggested that analysis of the present facts under both statutes would yield different results. Therefore, this Court also finds that Alltel's conduct with respect to Patterson does not constitute a violation of the FMLR.