Edna **VANDERHOOF**

v.

**LIFE EXTENSION INSTITUTE, d/b/a Executive Health Group, a Life Extension Institute Company, and Executive Health Medical Group of New Jersey, P.C., and Executive Health Medical Group of New York, as successor in interest to Life Extension Health Examiners, P.C.**

No. CIV. A. 96–3335(NHP).

United States District Court,
D. New Jersey.

Dec. 19, 1997.

Arthur L. Raynes, Eugene Huang, Wiley, Malehorn and Sirota, Morristown, NJ, for Plaintiff.

Steven W. Suflas, R. Monica Hennessy, Archer & Greiner, Haddonfield, NJ, for Defendants.

### *LETTER OPINION ORIGINAL ON FILE WITH CLERK OF THE COURT*

POLITAN, District Judge.

Dear Counsel:

This matter comes before the Court on the motion of defendants—Life Extension Institute d/b/a Executive Health Group, a Life Extension Institute Company; Executive Health Medical Group of New Jersey, P.C.; and Executive Health Medical Group of New York, P.C., formerly known as Life Extension Health Examiners—to dismiss the Amended Complaint of plaintiff, Edna Vanderhoof. Plaintiff also moves for summary judgment finding her to be an "eligible employee" under the Family and Medical Leave Act ("FMLA"). The Court heard oral argument in this matter on October 27, 1997. Based upon the reasons set forth more fully below, plaintiff's motion for summary judgment on the issue of the FMLA is **GRANTED** insofar as she was an eligible employee under the Act. Defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART.**

### *STATEMENT OF FACTS*

Vanderhoof was employed by Executive Health Group ("EHG") beginning in 1989 and by 1994 had been promoted to the position of Clinic Coordinator. At the time relevant to this action, Vanderhoof was fifty-four years old. In May 18, 1995, Life Extension Institute, Inc. ("LEI"), acquired certain businesses of EHG National Health Services, Inc., by way of an asset purchase agreement. Included in the purchase was the EHG clinic in Morristown, New Jersey, where Vanderhoof was employed. LEI also acquired EHG clinics in New York City, Los Angeles, and Stamford, Connecticut. The Morristown clinic was then renamed Life Extension In-

stitute d/b/a Executive Health Group, a Life Extension Institute Company.

After the acquisition, there was no interruption in the operation of the Morristown clinic. Though employees apparently had to fill out new employment applications and other new employee forms, this was merely pro forma. Vanderhoof continued her employment at the clinic and performed the same duties she had performed when EHG owned it. It is undisputed that LEI informed the employees that changes would eventually be made in processes, procedures, job duties, and responsibilities. These changes included new computer software, a new way of scheduling appointments, a different pricing schedule, new clients, and a change in marketing philosophy. Certain terms and conditions contained in the employee handbook also changed.

Vanderhoof had been involved in an automobile accident on September 22, 1994, in which she injured her knee. The pain worsened over time, and Vanderhoof informed Anne Keough, her supervisor, that she would need time off under the FMLA to have knee surgery.

Vanderhoof's request for FMLA leave was denied in September 1995 by Stacey Busija–Leoniak, LEI's Human Resources Director. The decision was based on the fact that she had not been employed long enough. Vanderhoof instead took an unpaid leave of medical absence, and she was permitted to purchase benefits during the period of leave. According to testimony by Leoniak, there is no guarantee of reinstatement after such a leave.

Vanderhoof's position as clinic supervisor did not exist at any of the other LEI clinic locations, and LEI management met to discuss this position and others. While Vanderhoof was on medical leave, Ann Finland, a part-time worker, and two others covered Vanderhoof's job without an increase in work hours.

On November 7, 1995, LEI mailed a letter informing Vanderhoof that her position was being eliminated as part of a downsizing of staff. She was provided with two weeks' severance pay and her duties were redistrib-uted among the three employees already filling in for her, including Finland. No one was hired to perform her duties and she was not qualified to do any other job (except for Findland's) in order to avoid layoff. Vanderhoof maintains that she should have been offered Finland's part-time job.

The November 7 letter also informed Vanderhoof that she would be receiving information regarding COBRA benefits within two weeks after her benefits ceased. On November 22, 1995, Joanne Fritz of LEI's parent corporation sent a letter to Vanderhoof notifying her of her COBRA rights. The letter was sent to Vanderhoof at her home address. Vanderhoof called Fritz to ask about the paperwork, and Fritz informed her that it had been mailed. Vanderhoof never contacted Fritz again.

## DISCUSSION

Rule 56 of the Federal Rules of Civil Procedure directs a court to enter summary judgment against a party which has failed to establish the existence of an essential element of its cause of action, and as to which that party bears the ultimate burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Spangle v. Valley Forge Sewer Auth.*, 839 F.2d 171, 173 (3d Cir.1988). The purpose of summary judgment is to eliminate a trial where it is unnecessary and would only cause delay and expense to the court and the litigants. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

Under Rule 56, summary judgment may only be granted if, drawing all inferences in favor of the nonmoving party, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir.1987), *cert. dismissed*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53. Once that burden has been met, the nonmoving party must set forth

"specific facts showing that there is a genuine issue for trial," *id.* at 324, 106 S.Ct. at 2553, or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Because there are various claims which need to be discussed, the Court will begin with an analysis of plaintiff's summary judgment motion on her FMLA claim and then address defendants' summary judgment motion.

### FMLA

The FMLA was enacted to provide leave for workers whose personal or medical circumstances necessitate leave in excess of what their employers provide. 29 C.F.R. § 825.101. "Eligible" employees of a covered employer are allowed to take up to twelve weeks of leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition. 29 C.F.R. § 825.100(a). More specifically, the FMLA applies when an employee's own serious health condition makes the employee unable to perform the functions of his or her job. 29 U.S.C. § 2612(a)(1)(D). Employees who take leave pursuant to the statute are entitled to return to the same or equivalent position and benefits as they had held previously. An employer who denies an employee these entitlements is in violation of the FMLA. 29 U.S.C. §§ 2614(a)(1), 2615(a); 29 C.F.R. § 825.100(c).

■ An eligible employee is one who has been employed "for at least 12 months by the employer with respect to whom leave is requested." 29 U.S.C. § 2611(2)(A)(i). The term "employer" encompasses "any successor in interest of an employer." 29 U.S.C. § 2611(4)(A)(ii)(II). LEI denied plaintiff's request for FMLA leave because it determined that it was not a "successor in interest" to EHG.

The issue of what constitutes a successor in interest under the FMLA is an issue of first impression in this Circuit. The FMLA has not yet promoted a flood of litigation, and the only case that has substantively addressed the issue of what constitutes a successor in interest under the Act is *Rhoads v. FDIC*, 956 F.Supp. 1239, 1252–54 (D.Md. 1997).

The regulations issued by the Department of Labor ("DOL") interpreting the FMLA state:

> [W]hen an employer is a "successor in interest," employees' entitlements are the same as if the employment by the predecessor and successor were continuous employment by a single employer.... A successor which meets FMLA's coverage criteria must count periods of employment and hours worked for the predecessor for purposes of determining employee eligibility for FMLA leave.

29 C.F.R. § 825.107(c).

The DOL regulations also set forth factors that should be considered when determining whether an employer is a "successor" as contemplated by the FMLA:

(1) Substantial continuity of the same business operations;

(2) Use of the same plant;

(3) Continuity of the work force;

(4) Similarity of jobs and working conditions;

(5) Similarity of supervisory personnel;

(6) Similarity in machinery, equipment, and production methods;

(7) Similarity of products or services;

(8) The ability of the predecessor to provide relief.

29 C.F.R. § 825.107(a). Though these regulations are clearly not binding on the Court, they do provide some guidance in answering the question of successorship. The Court will also look to Title VII cases and cases arising under the National Labor Relations Act ("NLRA") for guidance on the issue.[1]

---

1. The DOL regulations state:

   [I]n determining whether an employer is covered because it is a "successor-in-interest" to be a covered employer, the factors used under

   Title VII of the Civil Rights Act ... will be considered.

   29 C.F.R. § 825.107(a). The defendants argue correctly that the statutory policies underlying

■ The court in *Rhoads* relied on the eight factors in the regulation, and this Court will carefully weigh each articulated factor. However, the failure to meet one factor is not dispositive; the factors must be viewed in their totality. *See Rhoads*, 956 F.Supp. at 1252; 29 C.F.R. § 825.107(b). In examining the factors, the Court will look from the viewpoint of Vanderhoof at or near the time of the change in employer.[2]

## Continuity of the Same Business Operations

It appears beyond dispute that LEI acquired the clinics, their related contracts, and the "out-of-town" businesses of EHG, as well as EHG's name. LEI acquired the machinery, equipment, furniture, inventories, real estate leases, business contracts, equipment leases, books, documents, and medical records of EHG. After the acquisition, LEI changed its name to Executive Health Group, a Life Extension Institute Company.

The major businesses of EHG that LEI acquired were the clinics and the business contracts which were associated with those clinics, including the Morristown clinic at which Vanderhoof worked. There was no break in operations on the day following the purchase, and the clinic continued to provide the same types of services to clients. Though LEI might have begun targeting different clientele, the business operation was undisturbed.

the FMLA differ from those of Title 7 or the NLRA. Courts, however, routinely look to statutory construction of a similar term from other acts without looking at the remedial purposes. Therefore, this Court will look to Title 7 cases and NLRA cases with respect to the successor-in-interest issue.

**2.** The Court in *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 107 S.Ct. 2225, 96 L.Ed.2d 22 (1987), held that the standards utilized in determining the successor-in-interest question must be interpreted through the employee's viewpoint. *See* 482 U.S. at 43, 107 S.Ct. at 2236. The analysis is conducted while asking the question of whether an employee who has been retained will understandably view his or her job situation as essentially unaltered. *Id.*

Additionally, the *Rhoads* court, in looking at the "use of the same plant" issue, looked at a

## Use of the Same Plant

Clearly, the same building housed the Morristown clinic both before and after the purchase. LEI argues that former EHG operations in New York and Los Angeles were closed some time after the acquisition. This matters not, as the Morristown clinic remained a functional clinic.

## Continuity of the Work Force

LEI makes the tenuous argument that because the clinic employees ceased to be employees of EHG after the acquisition, this represents a clear break in employment such that this prong is not met. The Court declines to make this leap. It is commonsensical that the clinic employees would no longer be EHG employees after the acquisition. The fact remains, however, that all of the workers in Morristown were rehired and merely had to fill out new paperwork. This is the continuity contemplated by this part of the analysis.[3]

## Similarity of Jobs and Working Conditions

Vanderhoof's job remained the same. Her duties continued to include greeting clients, preparing charts and files, answering the phone, and other clerical duties.

■ Clearly, there were some changes as to wage and benefit policies, but these changes merely reflect minor variations in the work place. Such minor variations are not enough to prevent the label of successor employer from attaching. To prevent the label from attaching, there must be a funda-

point in time near or shortly after the succession of the business. 956 F.Supp. at 1253.

**3.** LEI also maintains that workers at the New York clinic were not rehired and that the New York and Los Angeles clinics were subsequently closed. This is irrelevant, as the Court is concerned with the Morristown clinic. If layoffs at other locations or closings at other locations could torpedo this prong of the analysis, then the Court surmises that no acquisition of a multi-location business would ever qualify as a succession sufficient for the FMLA.

The focus of the inquiry is necessarily on LEI's operations as they impinged on the employees in Morristown. The inquiry must specifically address operations at the Morristown plant rather than that of the entire LEI operation. *See United Food & Commer. Workers Int'l Union v. NLRB*, 768 F.2d 1463, 1472–73 (D.C.Cir.1985).

mental change in the nature of the business enterprise, more than a "mere restructuring of the hours or conditions of employment." *Systems Manag., Inc. v. NLRB,* 901 F.2d 297, 304 (3d Cir.1990).

LEI is looking at the trees rather than the forest by picking out each minor change made with respect to benefits and policies. Companies universally change such benefits and policies of an acquired business to conform with their own way of doing business. The changes must be substantial; they were not substantial in this case.

*Similarity of Supervisory Personnel*

■ Ann Keough remained the manager responsible for local day-to-day operations. Though a new team of administrators were put into place as part of LEI's acquisition, such a change in upper level personnel is not enough. Only when such a change in upper management has a "substantial transformation in the basic operations" of a facility is there a "change" which would impact this analysis. *See United Food,* 768 F.2d at 1473. There was no such "substantial transformation" here.

*Similarity in Machinery, Equipment, and Production Methods*

This prong is irrelevant in a nonmanufacturing context and will not be considered.

*Similarity of Products or Services*

LEI seeks to rewrite this prong of the analysis as "similarity of clientele." Much is made about LEI's shedding of EHG's "low-priced, high-volume patrons, and replacing them with LEI's targeted 'upscale' clientele." The type of service offered, however, remained the same. Whether those services were provided to executives or minimum wage workers matters not.

*The Ability of the Predecessor to Provide Relief*

This element is irrelevant here, as Vanderhoof's request for leave under the FMLA occurred months after the acquisition by LEI.

Based upon a weighing of all of the elements, the Court must conclude that LEI was a successor employer as contemplated by the FMLA and that Vanderhoof had the requisite length of time of employment to come within the protections of the FMLA. Vanderhoof was an "eligible employee" and, consequently, plaintiff's motion for summary judgment on that issue is **GRANTED.**

## AGE DISCRIMINATION CLAIM

■ Defendants move for summary judgment to dismiss plaintiff's complaint, which includes a count alleging that plaintiff was the victim of age discrimination, in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5–1 *et seq.* A NJLAD claim such as this is governed by the same standards and burden of proof analysis as are applied under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*

■ To succeed on a claim of age discrimination, a plaintiff first must establish a *prima facie* case of age discrimination by proving that she: (1) is over forty years of age; (2) is qualified for the position in question; (3) suffered an adverse employment action; and (4) was replaced by a sufficiently younger person to permit an inference of age discrimination. *Brewer v. Quaker State Oil Refining Corp.,* 72 F.3d 326, 330 (3d Cir. 1995).

■ In a reduction in force ("RIF") case, as the Court is faced with here, the *prima facie* elements are somewhat modified because it is improbable that a plaintiff would be replaced by someone from outside the organization. Therefore, in RIF cases, a *prima facie* case is established where the plaintiff can show that the plaintiff was in the protected class, was qualified, was laid off, and that other unprotected workers were retained. *See Marzano v. Computer Science Corp., Inc.,* 91 F.3d 497, 506 (3d Cir.1996) (quotation omitted).

■ The burden then shifts to the defendant, which must rebut this presumption by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506–07, 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407 (1993); *Brewer,* 72 F.3d at 330. The burden then shifts back to the plaintiff to satisfy her ultimate burden of proving that

the defendant's proffered reason is not the "true reason" for the decision, but instead is merely a pretext for age discrimination. *Hicks,* 509 U.S. at 511, 113 S.Ct. at 2749; *Bray v. Marriott Hotels,* 110 F.3d 986, 990 (3d Cir.1997).

The plaintiff can meet this ultimate burden by proving, by circumstantial evidence, that the defendant's reason is "unworthy of credence." *Armbruster v. Unisys Corp.,* 32 F.3d 768, 783 (3d Cir.1994). The plaintiff must point to evidence such that "a reasonable factfinder *could* rationally find them 'unworthy of credence' and hence infer 'that the employer did not act for [the asserted] nondiscriminatory reasons.'" *Fuentes v. Perskie,* 32 F.3d 759, 765 (3d Cir.1994) (citation omitted).[4]

The Court finds that plaintiff is clearly able to make out a *prima facie* case in the first instance. It is stipulated that Vanderhoof was in the protected class, she was qualified, and that she was laid off. It is also clear that other unprotected workers were retained in the "front office" where Vanderhoof was employed.[5] Defendants confuse Third Circuit precedent by continuing to maintain that the retained workers also be "similarly situated." It is incontestable that such a requirement is not a sine qua non for a *prima facie* case in the context of a RIF.

In *Marzano,* the Third Circuit rejected a similar argument by the defendants in that case, which argued that a plaintiff must show that other "similarly situated, unprotected employees" must be treated more favorably. The court rejected the defendants' premise, which they derived from a mistaken reading

of *Torre v. Casio, Inc.,* 42 F.3d 825, 830 (3d Cir.1994). The court stated that *"Torre* did not create any legal requirement such as the one that Defendants attempt to impose." *Marzano,* 91 F.3d at 510.

The fact that similarly situated employees were retained certainly strengthens the plaintiff's case, and makes more urgent the employer's task of providing a reason other than discrimination for its different treatment of plaintiff. But the Court [in *Torre* ] did not create a new legal requirement in the process, and Defendants can cite no case in this Circuit, nor do we know of any, where it was described as a requirement.
*Id.*[6]

Therefore, plaintiff in the first instance is able to make out a *prima facie* case, which merely means that plaintiff's factual scenario shows however slightly that "discrimination *could* be a reason for the employer's action." *Id.*

As a second step, the Court must look to the defendants' proffer of a legitimate, nondiscriminatory reason for the adverse employment action to rebut the *prima facie* case. Here, defendants maintain that a RIF was necessary because of "business conditions" and that LEI's business plan from the outset of the acquisition was to downsize the workforce, achieve immediate economies of scale, and eliminate EHG overstaffing.[7]

Plaintiff has the ultimate burden of rebutting this contention by providing evidence that it is a pretext for discriminatory practices. The question of why an employer took an adverse employment action against a

---

4. In addition, an inference of pretext can arise "if the plaintiff can raise suspicions with respect to the defendant's credibility or the employer's treatment of the employee." *Bray,* 110 F.3d at 990.

5. Philla Walker, Ann Finland, and Joy Acre were three remaining front office employees, and their ages were 32, 34, and 28 years, respectively.

6. Defendants herein maintain that *Marzano* was recently interpreted by *Bray* to mean that a *prima facie* case required that a plaintiff establish the similar qualifications of his successor. *Bray* involved the denial of a promotion, not a RIF. *See* 110 F.3d at 989. The RIF situation is unique

and that uniqueness was addressed by the *Marzano* court. *See* 91 F.3d at 508–09. The *Bray* court did not address the *Marzano* decision.

7. A supplemental certification submitted after the hearing in this matter reflected the number of former EHG employees who continued to be employed at certain points in time. The total number of persons employed by those sections of EHG that were acquired by LEI on May 17, 1995 (the day before the asset purchase) was 103. The total number of former EHG personnel employed by LEI on May 18, 1995 was 76. On August 18, 1995, 60 employees remained, and in October 1995, 51 remained.

particular plaintiff is clearly a factual question. *See Chipollini,* 814 F.2d at 899. By pointing to evidence "which calls into question the defendant's intent, the plaintiff raises an issue of material fact which, if genuine, is sufficient to preclude summary judgment." *Id.* Plaintiff need not provide "additional evidence" of discrimination; this requirement would "topple the complex evidentiary edifice constructed by the Supreme Court." *Marzano,* 91 F.3d at 510.

Plaintiff herein makes several points. First, Vanderhoof claims that she was relieved of her job because she did not fit the "youthful" image that LEI wished to project. She points to the ages of the front office employees at Morristown who remained after her termination, all of whom were younger than 35. Vanderhoof also points to the trend towards younger front office staff members at other LEI facilities and even the officers of LEI.

Additionally, plaintiff points to monthly management reports and testimony of LEI officers to allege that the Morristown operation was profitable and that because she was the only employee to be terminated in the Morristown office,[8] the RIF explanation was a pretext.

Based upon all of plaintiff's responses to defendants' proffer, the Court is convinced that summary judgment on the issue of age discrimination would be inappropriate. Defendants would have this Court grant summary judgment because Vanderhoof is unable to provide additional evidence to support her contentions of pretext. Defendants rely for this proposition on cases from other circuits which seemingly require more evidence to get past the summary judgment hurdle than the Third Circuit does. Because the Third Circuit does not require such additional evidence, plaintiff's rebuttal is sufficient to

withstand summary judgment on her age discrimination claim.

### FMLA CLAIM

■ Defendants move for summary judgment dismissing plaintiff's claim that the defendants violated the FMLA by not reinstating her.

Under the FMLA, an employer need not provide an employee "any right, benefit, or position of employment other than the right, benefit, or position to which the employee would have been entitled had the employee never taken leave." 29 U.S.C. § 2614(a)(3). "An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period." 29 C.F.R. § 825.216(a).

Defendants allege that plaintiff was validly terminated due to a RIF and such a termination is not a violation of the FMLA.[9] Because the Court found above that there was a sufficient question of fact as to the validity of defendants' contention that plaintiff was terminated due to a RIF, summary judgment dismissing the FMLA claim is inappropriate at this time. *See Marzano,* 91 F.3d at 511–12.

### BREACH OF EMPLOYMENT CONTRACT

■ In the Third Count of plaintiff's Amended Complaint, she alleges that LEI's "handbooks, manuals, brochures, and other written material" conferred upon her "job security," such that LEI could not terminate her without good cause. Defendants have moved for summary judgment seeking to dismiss this Court.

New Jersey is an at-will employment state, meaning that an employer has the right to terminate an employee at any time, with or without notice and with or without cause,

---

**8.** Defendants maintain that two positions were eliminated at the Morristown facility in addition to Vanderhoof's termination, but the two employees in the eliminated positions were not terminated.

**9.** Defendants rely on a case from the District of Maine, *Patterson v. Alltel Information Services, Inc.,* 919 F.Supp. 500 (D.Me.1996), in support of the proposition that the FMLA's reinstatement

provision does not impose a duty on a company to protect the position of an employee on FMLA leave from elimination for legitimate purposes. Though the Court agrees with this general proposition, the facts in *Patterson* are inapposite to this matter, as the plaintiff in that case was informed before he took FMLA leave that he would be replaced. 919 F.Supp. at 503–04.

subject to certain exceptions. "Today, both employers and employees commonly and reasonably expect employment to be at-will, unless specifically stated in explicit, contractual terms." *Bernard v. IMI Systems, Inc.,* 131 N.J. 91, 106, 618 A.2d 338 (1993).

The LEI Employee Handbook is a twenty-nine page document which plaintiff admits having received. The first ten pages are an overview of the various divisions of LEI's parent company, United Medical Corporation. The section regarding the employer's policies and procedures begins on page eleven, where it reads:

> **This handbook is not an employment contract.** These policies represent general guidelines and if they are changed or not followed in a particular case, your recourse shall be the Problem Resolution Procedure explained elsewhere in this handbook.

> Employment at United Medical and/or its divisions is at-will. That is, either you or United Medical and/or its divisions for whom you are employed may terminate the employment relationship at any time, with or without cause. The at-will relationship remains in full force and effect regardless of any statements to the contrary made by company personnel or set forth in any documents other than those signed by the Chairman or President of United Medical Corporation.

*LEI Employee Handbook,* attached as Exhibit 16 to Defendants' Appendix to Statement of Material Undisputed Facts ("Def.App.").

Additionally, on May 16, 1995, Vanderhoof filled out an "Application for Employment" form for LEI, which included the statement that "any employment relationship with this organization is of an 'at-will' nature, which means that the Employee may resign at any time and the Employer may discharge Employee at any time with or without cause." *Application for Employment,* Def.App. Ex. 50.

The seminal case in New Jersey regarding whether an employment manual constitutes a valid contract of employment is *Woolley v. Hoffmann–La Roche, Inc.,* 99 N.J. 284, 491 A.2d 1257 (1985), *modified,* 101 N.J. 10, 499 A.2d 515 (1985). In *Woolley,* the court stated:

> [W]hen an employer of a substantial number of employees circulates a manual that, when fairly read, provides that certain benefits are an incident of employment (including, especially, job security provisions), the judiciary, instead of "grudgingly" conceding the enforceability of those provisions, should construe them in accordance with the reasonable expectations of the employees.

99 N.J. at 297–98, 491 A.2d 1257 (citation omitted).

■ Clearly, there is no categorical test as to whether an employment manual gives rise to a reasonable expectation of employees that the manual confers enforceable obligations. *Witkowski v. Thomas J. Lipton, Inc.,* 136 N.J. 385, 643 A.2d 546 (1994). Absent a clear and prominent disclaimer, however, "an implied promise contained in an employment manual that an employee will be fired only for cause may be enforceable against an employer even when the employment is for an indefinite term and would otherwise be terminable at will." *Woolley,* 99 N.J. at 285–86, 491 A.2d 1257.

■ An employer prevails when no reasonable employee "could fail to understand that the manual was not intended to change the employer's right to terminate its employees with or without cause." *Jackson v. Georgia–Pacific Corp.,* 296 N.J.Super. 1, 16, 685 A.2d 1329 (App.Div.1996), *cert. denied,* 149 N.J. 141, 693 A.2d 110 (1997).

In this case, the manual merely delineated certain policies and procedures to which an employee was expected to adhere. The manual made clear that the plaintiff could be terminated for any number of reasons, including but not limited to such things as tardiness, destruction of property, or drug/alcohol abuse. The manual was clearly not an employment contract.

■ Even if the Court were to determine that the manual could reasonably be construed as a contract for employment, there was clear language at the beginning of the policy section of the manual that the employ-

ment of the employee was at-will. This squares clearly with the *Woolley* court's final words:

> [I]f the employer, for whatever reason, does not want the manual to be capable of being construed by the court as a binding contract, there are simple ways to attain that goal. All that need. be done is the inclusion in a very prominent position of an appropriate statement that there is no promise of any kind by the employer contained in the manual ... and that the employer continues to have the absolute power to fire anyone with or without good cause.

99 N.J. at 309, 491 A.2d 1257.

Conspicuousness of a disclaimer is always a matter of law. *Nicosia v. Wakefern Food Corp.*, 136 N.J. 401, 416, 643 A.2d 554 (1994). "No single distinctive feature is essential *per se* to make a disclaimer conspicuous." *Id.* A disclaimer should, however, be placed or presented in such a way that is calculated to focus the attention of a reader. A reader's attention may be captured by setting off the disclaimer with different type, including bold print. *Id.* at 415, 643 A.2d 554.

The disclaimer herein is set off by bold print in the first sentence and is located on the first page of the relevant policy and procedure section of the manual. The preceding ten pages merely contain the corporate structure and an explanation of each division of the company. The disclaimer is therefore adequate in this instance.

Consequently, defendants' motion for summary judgment as to plaintiff's breach of employment contract claim is **GRANTED,** and Count Three of plaintiff's Amended Complaint is hereby **DISMISSED WITH PREJUDICE.**

### COBRA

The Consolidated Omnibus Budget Reconciliation Act of 1986 ("COBRA") provides employees with the opportunity to continue their group health coverage in the face of a qualifying event, such as termination. *See Hubicki v. Amtrak Nat'l Passenger R.R. Co.*, 808 F.Supp. 192, 196 (S.D.N.Y.1992). The plan administrator of the employer must provide notice to employees of their COBRA rights upon the occurrence of such qualifying event. 29 U.S.C. § 1166(a)(4)(A).

Employers are required to act in good faith with regard to complying with the COBRA notification requirements. Courts that have considered COBRA's requirements have concluded that mailing a notice to an employee's last known address constitutes a good faith attempt at COBRA compliance. Employers are not required to ensure that such notice is received. *See Myers v. King's Daughters Clinic*, 912 F.Supp. 233, 236 (W.D.Tex.), *aff'd*, 96 F.3d 1445 (5th Cir.1996); *Jachim v. KUTV Inc.*, 783 F.Supp. 1328, 1333 (D.Utah 1992); *Truesdale v. Pacific Holding Co./Hay Adams Div.*, 778 F.Supp. 77, 81 (D.D.C.1991).

On November 22, 1995, Joanne Fritz, defendants' benefits administrator, prepared and mailed the requisite COBRA letter to Vanderhoof, with a copy mailed to Busija–Leoniak, a vice-president of defendants. The copy to Busija–Leoniak was received at LEI's New York headquarters via regular mail for inclusion in plaintiff's personnel file. Vanderhoof contends that she never received the letter, though she received every other mailed communication from defendants.

Defendants clearly complied with their obligations under COBRA by mailing the COBRA notice to plaintiff's listed home address. Therefore, defendants' motion for summary judgment dismissing the COBRA claim is **GRANTED,** and Count Four of plaintiff's Amended Complaint is **DISMISSED.**

### CONCLUSION

Based upon the foregoing, plaintiff's motion for summary judgment on her claim that she was an eligible employee under the FMLA is **GRANTED.** Defendants' motion for summary judgment dismissing plaintiff's Complaint is **GRANTED IN PART AND DENIED IN PART.** More particularly, defendants' motion for summary judgment with regard to plaintiff's COBRA claim and breach of contract claim is **GRANTED** and the motion with regard to the age discrimination claim and the FMLA claim is **DENIED.** Counts Three and Four of plaintiff's Amend-

ed Complaint are therefore **DISMISSED WITH PREJUDICE.**

An appropriate Order accompanies this Letter Opinion.

### *ORDER*

This matter having come before the Court on the motion of defendants—Life Extension Institute d/b/a Executive Health Group, a Life Extension Institute Company; Executive Health Medical Group of New Jersey, P.C.; and Executive Health Medical Group of New York, P.C., formerly known as Life Extension Health Examiners—to dismiss the Amended Complaint of plaintiff, Edna Vanderhoof; and plaintiff having moved for summary judgment finding her to be an "eligible employee" under the Family and Medical Leave Act ("FMLA"); and the Court having heard oral argument in this matter on October 27, 1997; and for the reasons set forth more fully in the accompanying Letter Opinion;

IT IS on this 19th day of December, 1997,

**ORDERED** that plaintiff's motion for summary judgment on the issue of the FMLA is **GRANTED** insofar as she was an eligible employee under the Act; and it is

**FURTHER ORDERED** that defendants' motion for summary judgment dismissing plaintiff's Amended Complaint is **GRANTED IN PART AND DENIED IN PART** in that defendants' motion for summary judgment with regard to plaintiff's COBRA claim and breach of contract claim is **GRANTED** and the motion with regard to the age discrimination claim and the FMLA claim is **DENIED;** and it is

**FURTHER ORDERED** that Counts Three and Four of plaintiff's Amended Complaint be and hereby are **DISMISSED WITH PREJUDICE.**