### Gabriel AHMARANI

v.

### SIELING & JONES, INC., et al.

### No. CIV. JFM–01–2408.

United States District Court,
D. Maryland.

July 25, 2002.

Thomas J. Dolina, Bodie Nagle Dolina Smith and Hobbs PA, Towson, MD, for Plaintiff.

Donald F. Burke, Semmes Bowen and Semmes PC, Baltimore, MD, Jonathan R. Topazian, Semmes Bowen and Semmes PC, Washington, DC, for Defendants.

### MEMORANDUM

MOTZ, District Judge.

Plaintiff Gabriel Ahmarani has brought this action against defendants, Sieling & Jones, Inc. and its president, Edward G. "Biff" Jones, III. In Count I of his amended complaint, Ahmarani alleges that the defendants violated his right under the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601 *et seq.*, to be restored to his position of employment or to an equivalent position upon return from a qualified leave of absence.[1] Defendants have filed a motion for summary judgment. The motion will be granted.

### I.

Ahmarani was employed as the plant manager for defendant, Sieling & Jones, Inc, beginning on May 3, 1999. Defendant Jones and Anthony Tirocchi, controller of the company, were his supervisors. Ahmarani was responsible for manufacturing operations of the company and worked closely with Jones and Tirocchi, including having a daily production meeting with them. From early in his employment, Ahmarani felt that Jones' management style

---

1. Ahmarani has voluntarily dismissed the other two counts of his amended complaint.

was inappropriate. Ahmarani Dep. at 31–33, 72. Jones also had difficulty working with Ahmarani. Jones Dep. at 122. According to Jones, he wanted to fire Ahmarani by late 1999, but was convinced by Tirocchi to give Ahmarani another chance. *Id.* at 126, 140; Tirocchi Dep. at 17. The relationship between Jones and Ahmarani deteriorated further in January 2000, when Jones stormed out of a meeting due to his frustration with Ahmarani. Jones Dep. at 124.

According to Jones and Tirocchi, after this January meeting, Tirocchi agreed that Ahmarani had to be replaced. *Id.* at 140; Tirocchi Dep. at 15–18. Shortly thereafter, Jones, as he had in the past, contacted two business associates to let them know he was interested in candidates for plant manager. Jones Dep. at 133–36; Havens Decl. at ¶¶ 2–3; Sampson Decl. at ¶¶ 2–3. On March 16, 2000, Mike Custer sent Jones a resume and cover letter expressing interest in the job of plant manager. Def.'s Ex. F, Custer Dep., Ex. 1. On March 23, 2000, Jones sent Custer information regarding Sieling & Jones and expressed interest in meeting with him. Def.'s Ex. G; Custer Decl., Ex. 1. In a telephone call around that same time, Jones informed Custer that he was unhappy with Ahmarani and wanted to replace him. Custer Dep. at 25–26. On April 20, 2000, Custer spent two to three hours at Sieling & Jones for a "fact-finding interview" with Jones and Tirocchi. Custer Dep. at 30–32. According to Custer, during that interview, Jones reiterated that he was unhappy with Ahmarani and was going to replace him. *Id.* at 39. Custer sent Jones a list of references on May 1, 2000 and a second interview was conducted later that week. Pl.'s Ex. 6. On May 9,

2000, Custer accepted the plant manager position at Sieling & Jones contingent on acceptable compensation terms being arranged. Def.'s Ex. G, Custer Decl., Ex. 2. These terms were successfully arranged and Custer began work on July 10, 2000.

On April 24, 2000, four days after Custer's first interview with Sieling & Jones, Ahmarani notified Jones and Tirocchi that he would need to take a leave of absence beginning May 30, 2000, for surgery related to prostate cancer. Ahmarani Dep. at 133–34. Jones and Tirocchi expressed concern to Ahmarani regarding his health. *Id.* at 140. Neither told Ahmarani that his job was in jeopardy or that there would be any problem with the leave he requested. *Id.* at 141. In fact, when Ahmarani told them that he would need at least a month off, Jones told him to take two months if he needed to do so.[2] *Id.* at 147. On June 15, 2000, Jones met with Ahmarani and fired him. According to Ahmarani's handwritten notes of the meeting, Jones told Ahmarani that the reason for his being fired was an inability to communicate and a defensive attitude. Def.'s Ex. A, Ahmarani Dep., Ex. 5.

## II.

The FMLA provides that "any eligible employee who takes leave ... shall be entitled, on return from such leave—(A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position...." 29 U.S.C. § 2614(a)(1). However, this provision "shall [not] be construed to entitle any restored employee to ... any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the

---

**2.** Initially Ahmarani claimed that Jones and Tirocchi "assured him his position would remain open." Amended Compl. at ¶¶ 14, 16. Ahamarani now acknowledges that such an explicit representation was never made to him. Ahmarani Dep. at 146.

employee not taken the leave." 29 U.S.C. § 2614(a)(3)(B). Therefore, if Ahmarani would have been fired for his inability to communicate and defensive attitude even if he had not taken leave, then he is not entitled to be restored to his position of employment even though he was not fired until after he went on leave. *See Kohls v. Beverly Enters. Wis., Inc.*, 259 F.3d 799, 805 (7th Cir.2001) (holding that to establish a violation of the FMLA, employee must prove that employer would not have discharged her had she not taken FMLA leave).

There is no direct evidence in the record to support the argument that defendants' decision to fire Ahmarani was related to his FMLA leave rather than defendants' dissatisfaction with Ahmarani's communication skills and attitude. Instead, Ahamarani makes an inferential argument, citing language in *Kohls* where the court stated:

> We can imagine circumstances in which the timing of [the decision to fire an employee] could lead a fact finder to infer that the employee would not have been fired absent her taking of leave (if, for example, a supervisor who had been aware of problems with an employee did not decide to fire the employee until she took leave, and the supervisor based the firing on the incidents of which the employer had already been aware).

*Id.* at 806. Relying on this dicta, Ahmarani contends that the facts in the present record suggest that defendants had not decided to fire him until after he requested FMLA leave on April 24, 2000. Therefore,

he argues, a fact finder could infer that defendants would not have fired him unless he took leave.

Ahmarani's argument is unpersuasive because the present record contains strong evidence that defendants had decided to fire Ahmarani prior to his request for FMLA leave. Jones and Tirocchi both testified that Jones wanted to fire Ahmarani in late 1999 and that Tirocchi agreed to fire him shortly after the incident between Jones and Ahmarani in January 2000. Jones Dep. at 126, 140; Tirocchi Dep. at 15–18. By this time, Ahmarani was aware of Jones' dissatisfaction with him.[3] Ahmarani Dep. at 31–33, 72–74 (describing incident in which Jones criticized Ahmarani "severely" in front of a group of his "peers" and "colleagues"). Jones and Tirocchi's testimony is corroborated by the fact that Jones sought candidates for the position of plant manager during the winter of 2000. Havens Decl. at ¶¶ 2–3; Sampson Decl. at ¶¶ 2–3. Most importantly, correspondence between Jones and Custer indicates that in March of 2000, Jones arranged an interview with Mike Custer for Ahmarani's position and conducted this interview on April 20, 2000—four days before Ahmarani requested FMLA leave. Further, on several occasions, Jones made it clear to Custer that he was being interviewed to replace Ahmarani as plant manager because Jones was dissatisfied with Ahmarani. Custer Dep. at 25–26, 39.

Based on the present record, a reasonable jury could reach only one conclusion:

---

**3.** The fact that Ahmarani knew of Jones' displeasure with him distinguishes the present case from *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 926 (5th Cir.1999). In *Nero*, an employee had received positive evaluations before taking FMLA leave, but his employer fired him upon his return from the leave for "sub-standard managerial practices [and]

trouble getting along with other employees." *Id.* at 926. There was also no documentation to support the contentions of the employee's supervisors that they had counseled the employee regarding his management style. *Id.* A jury finding that the employer had violated the FMLA was upheld.

While the exact date that Ahmarani would be fired may not have been set when he requested FMLA leave, Jones and Tirocchi had already decided to fire him before he requested the leave because they were unhappy with his communication style and attitude.[4] For this reason, Ahmarani was not entitled to be restored to his previous position and defendants' motion for summary judgment on Ahmarani's FMLA claim will be granted. *See, e.g., Beno v. United Tel. Co. of Fla.*, 969 F.Supp. 723, 726 (M.D.Fla.1997) (granting summary judgment to employer on FMLA claim where employee's supervisors had recommended termination prior to employee's request for FMLA leave even though termination occurred while employee was on leave); *Patterson v. Alltel Info. Servs., Inc.*, 919 F.Supp. 500, 505 (D.Me.1996) (holding that employee was not entitled to be restored to position as account manager when he returned from leave because decision to replace him had been made three weeks before he requested leave); *Tuberville v. Personal Fin. Corp.*, 1996 WL 407571, at *3 (N.D.Miss.1996) (holding that employee was not entitled to be restored to position after FMLA leave when there was a history of poor performance and "the wheels of termination were put in motion before the request for leave").

A separate order granting defendants' motion for summary judgment is being entered herewith.

### ORDER

For the reasons stated in the accompanying memorandum, it is, this 25th day of July 2002 ORDERED

1. The defendants' motion for summary judgment is granted; and

2. Judgment is entered in favor of all defendants against plaintiff.

---

4. Ahmarani contends that his employment record does not support an inference that defendants had already decided to fire him prior to April 24, 2000. He argues that he met defendants' performance criteria, that his employee file did not indicate any dissatisfaction with his work, and that he had not been subjected to progressive discipline prior to termination. Ahmarani's performance is not relevant, and nothing in the record suggests that progressive discipline or notations in a personnel file are defendant's regular, let alone required, practices.

Ahmarani also argues that defendants' informal approach to replacing him does not support their contention. He relies on the facts that (1) defendants had not advertised the position as they did when he was chosen; (2) Custer's application for the position was unsolicited by defendants; (3) the April 20, 2000 meeting with Custer was not a formal interview; and (4) no formal offer had been made to Custer prior to Ahmarani's request for leave. However, the evidence in the record suggests that placing an advertisement to fill a management position was not defendants' regular practice. *See* Jones Dep. at 141–42. Further, defendants' positive reaction to Custer's application, regardless of how it reached them, and willingness to spend several hours in a preliminary interview only bolsters their claim that the decision to fire Ahmarani had already been made.